KELL MILLING CO. v. H. O. WOOTEN GROCERY CO. (No. 717.)

(Court of Civil Appeals of Texas. El Paso. May 17, 1917. Rehearing Denied May 31, 1917.)

1. FRAUDULENT CONVEYANCES ⬤➡47—BULK SALES—VALIDITY.

A conveyance of a stock of goods to a creditor by a bill of sale, without complying with the Bulk Sales Law (Rev. St. art. 3971), was void as to other creditors, though the grantee may have intended to receive and hold the goods in trust for all creditors, where it did not appear that the grantor intended that the goods should be so received and held, and the bill of sale was absolute on its face; Rev. St. art. 3973, providing that article 3971 shall not apply to a transfer for the payment of debts, where all creditors share in the proceeds without preference, not applying in such case.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 34.]

2. FRAUDULENT CONVEYANCES ⬤➡229—GARNISHMENT—RIGHT TO REMEDY—BULK SALES LAW.

Where a sale or transfer has been made in violation of the Bulk Sales Law, a creditor may have his remedy by garnishment against the transferee.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 668-670.]

Appeal from Taylor County Court; E. M. Overshiner, Judge.

Action by the Kell Milling Company against the H. O. Wooten Grocery Company. From a judgment for plaintiff for less than claimed, plaintiff appeals. Reversed and remanded.

W. H. Graham, of Abilene, for appellant. J. M. Wagstaff, of Abilene, for appellee.

Statement of the Case.

HIGGINS, J. A. B. Childress was engaged in the retail grocery business in the city of Abilene. He was insolvent, and indebted to the Kell Milling Company, appellant, H. O. Wooten Grocery Company, appellee, and others. Appellee became aware of his embarrassed financial condition, and on March 27, 1916, J. Pink Wooten, a representative of appellee, took an inventory of his stock of goods. On March 28, 1916,

Childress executed and delivered to appellee a bill of sale of his entire stock of goods, and transferred all open accounts due him in connection with his store. The instrument was duly acknowledged, recited a consideration of $10 cash and other valuable considerations paid by appellee, and contained a general warranty of title. Upon said last-mentioned date appellee disposed of the stock of goods and credited the proceeds of the sale, amounting to $190.66, to an account upon its own ledger, known as "Trust Fund account," for the benefit of the creditors of A. B. Childress. Prior to and upon the date of the bill of sale appellee knew of the insolvent condition of Childress.

On April 1, 1916, appellant sued Childress for the amount due it, and on April 10, 1916, obtained judgment therefor, in the sum of $123.61 and costs of court, amounting to $2.15. Ancillary to this suit, appellant, on April 1, 1916, garnished appellee. Appellee answered the inquiries of the writ in the negative. Appellant controverted the answer, averring that appellee has acquired the Childress stock of goods without complying with the provisions of articles 3971–3973, R. S., commonly known as the "Bulk Sales Law," as amended by Acts 34th Leg. c. 114. In reply to the controverting affidavit, appellee answered as follows:

"1. Garnishee denies that it violated any law in taking over the stock of goods of A. B. Childress, for the reason that, at the time the said A. B. Childress conveyed the stock of goods, wares, and merchandise to it, the said A. B. Childress was due and owing it a sum larger than the value of the said goods, to wit, the sum of $330.50, which amount was unsecured, and this defendant had the right, as it then believed and now believes, to take over said goods, wares, and merchandise, and apply same to its indebtedness.

"2. [This paragraph is not material to any question raised by the appeal.]

"3. Further answering said controverting affidavit, said garnishee says that said A. B. Childress on the 28th day of March, 1916, conveyed said goods, wares, and merchandise to it, and took same over to be handled by it, for the benefit of those creditors who would accept their pro rata part of the assets of said Childress, and it took said goods, wares, and merchandise over for the purpose of handling the same, and offered to handle the same, in that way, and offered to pay the plaintiff its pro rata part of the assets; but the plaintiff refused to accept under said transfer and agreement, and brought its writ of garnishment, and has prosecuted its writ of garnishment, and hence is not entitled to any pro rata part of any assets, and as against this plaintiff the defendant claims the right, and asserts the right, to hold the proceeds of said goods upon the application of its own debt, which debt is much larger than the entire assets of the said A. B. Childress. Garnishee further says that it never denied the right of the plaintiff to share in the assets of said Childress' pro rata part until after the plaintiff refused to do so, and garnishee prays the court that it be discharged, with its costs."

It was an admitted fact that, before the execution and delivery of the bill of sale and transfer of the stock of goods, appellee did not comply with those provisions of the Bulk Sales Law which provide that such a sale shall be void as against creditors—

"unless the purchaser or transferee demand and receive from the seller or transferor a written list of names and addresses of the creditors of the seller or transferor, with the amount of the indebtedness due or owing to each and certified by the seller or transferor under oath to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser or transferee shall at least ten days before taking possession of such merchandise or merchandise and fixtures, or paying therefor, notify personally or by registered mail every creditor whose name and address are stated in said list, or of which he has knowledge of the proposed sale and of the price, terms and conditions thereof."

J. Pink Wooten, appellee's representative, testified in substance that he had a conversation with Childress on March 27, 1916, and that the inventory was taken upon the afternoon of that date; that he tried to ascertain the amount of Childress' indebtedness, and made inquiry of him concerning same, and was advised by Childress that he owed a coffee account, the Radford Grocery Company, and a meat account, besides appellee's claims; that he denied owing the Kell Milling Company anything and also stated that he did not owe the Collins Produce Company anything; that he thereafter ascertained from Mr. Collins that he did owe the Collins people, and went back that night, and Childress then told him that he owed appellee about $100, and also owed the Collins Produce people. The next morning, after the inventory had been taken, he went to Mr. Collins and carried him up to Childress' place; that he saw all of the creditors he deemed necessary about the purpose for which they were taking over the Childress goods; that he took these goods over, as they did almost weekly, to prorate among the creditors; that he took them over for the purpose of prorating among the creditors. About two days thereafter he saw Mr. Mathews, the representative of the Kell Milling Company; that he and Mr. H. O. Wooten both had a conversation with him; that he then told Mathews the condition upon which he took the goods over, and that his account would be taken care of in proportion to the rest; that that was their customary way of handling those matters, and they would take care of his account, like they would take care of others, on a pro rata basis; that Mathews refused to accept his pro rata part and participate in the proceeds; that they were going to permit all the rest of the creditors to participate in it to the extent of their proportionate part.

Mr. Bacon, vice president of appellee, testified: That they were holding the proceeds of the sale of the Childress goods in what they called a trust fund account for the benefit of creditors. On April 7th appellee wrote the manager of Kell Milling Company a letter, in which they stated, in substance, that they had had Childress to turn over the goods

to them for the purpose of disposing of same and distributing the proceeds pro rata among his creditors, and that they had disposed of the same for the sum of $190.66, and that that sum was being then held by him in trust for the benefit of creditors. The letter is quite long, and the remainder thereof is not material. It was admitted that, before the execution and delivery of the bill of sale by Childress and delivery of the stock of goods to appellee, the appellee did not give any notice to appellant that the proposed sale and transfer was about to take place.

The foregoing statement embraces all of the material facts, and there is no dispute concerning same. Upon such facts, the court rendered a judgment in favor of the Kell Milling Company against appellee for the sum of $17; that being appellant's pro rata part of the proceeds of the sale of the Childress stock of goods. All costs were taxed against appellant. From the judgment so rendered the Kell Milling Company prosecutes this appeal.

### Opinion.

Article 3973, R. S., provides that the two preceding articles shall not apply—

"to a sale or transfer of stocks of merchandise and fixtures for the payment of bona fide debts, where all creditors share in proportion to their respective claims, and without preference in the sale or transfer or the proceeds thereof."

The proposition urged by appellee in support of the judgment of the court below is that, the debtor Childress having transferred the stock of goods to appellee for the purpose of paying all creditors share and share alike, and appellee having accepted the trust, it was not required to comply with the provisions of article 3971, as such transaction was exempted from the requirements thereof under the provisions of article 3973 above quoted. This proposition would be sound, if its underlying premise of fact were correct. But the facts disclosed by the record do not sustain the same. In the first paragraph of appellee's answer quoted above, it averred upon oath that, when it took over the Childress stock of goods, it then believed and still believes that it had the right to do so and apply the same to the payment of its indebtedness. This seems to imply that appellee was taking the goods to pay its own indebtedness and to the exclusion of other creditors.

[1] But we need not rest our conclusion upon the appellee's pleading, for the facts themselves fail to disclose the trust asserted. The bill of sale was absolute upon its face, and does not disclose the same. Manifestly the conveyance was not impressed with a trust, unless it was the intention of the grantor that the same should be so impressed. The mere intention upon the part of the grantee to receive and hold the goods in trust would not be sufficient. To do so might be directly contrary to the intention of the gran-

tor. A trust of this nature cannot be created without the agreement of both parties to the conveyance. The record is entirely silent as to the intention with which Childress transferred and delivered the goods to appellee, and in the absence of an intention upon his part that appellee should receive and hold the goods in trust for the benefit of all creditors, no trust would arise, and the provisions of article 3973 would not apply.

[2] It is well settled that, where a sale or transfer has been made in violation of the Bulk Sales Law, a creditor may have his remedy by garnishment against the transferee. Owosso, etc., v. McIntosh et al. (Sup.) 179 S. W. 257, L. R. A. 1916B, 970; Mayfield & Co. v. Harlan et al., 184 S. W. 313; Barcus v. Parlin & Orendorf, 184 S. W. 640.

It follows, from what has been said, that judgment should have been rendered in favor of appellant for the amount of his judgment against Childress and all costs. The case is reversed and remanded, with instructions upon retrial to render judgment for appellant unless the evidence establishes that the transfer to appellee was made in trust for the benefit of all creditors, without preference; and, as indicated above, such trust must have been created by mutual agreement of the grantor, Childress, and the appellee.

Reversed and remanded.