## WESTERN INDEMNITY CO. v. MILAM.
### (No. 646.)

(Court of Civil Appeals of Texas. Beaumont. April 7, 1921. Rehearing Denied April 20, 1921.)

1. **Evidence** ⊙⇒314(1), 471(15)—**Testimony held not inadmissible as hearsay and conclusion of witness.**

Testimony of witness that an applicant for compensation under the Workmen's Compensation Act (Acts 35th Leg. [1917] c. 103 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91]) had a wife and several children, and that they lived together, and, although witness had never visited applicant, he knew about his financial condition, etc., *held* not subject to the objection that it was hearsay and a conclusion of the witness.

2. **Master and servant** ⊙⇒417(9)—**Court authorized to increase compensation under prayer for general relief.**

Where prayer of injured employé was for a lump sum under the Workmen's Compensa-

tion Act (Acts 35th Leg. [1917] c. 103 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91]) or for general relief, the court was authorized to increase compensation by decreasing the number of weeks under the prayer for general relief.

**3. Master and Servant ⬅️399—Acting on advice not refusal to accept or receive medical treatment within compensation act. ·**

Refusal of an injured servant to submit himself to a surgical operation was not a refusal "to accept or receive" medical treatment under the Workmen's Compensation Act (Acts 35th Leg. [1917] c. 103 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 to 5246—91]) where in refusing to do so he was acting under the advice of skillful physicians who were treating him.

**4. Master and servant ⬅️385(20)—Discount required when compensation is increased and number of weeks is decreased.**

Under Workmen's Compensation Act (Acts 35th Leg. [1917] c. 103) pt. 1, § 15 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—33) authorizing a lump sum settlement, a discount is required when the compensation is increased and the number of weeks is decreased.

**5. Master and servant ⬅️385(8)—Method of computing compensation for partial disability defined.**

Under Workmen's Compensation Act (Acts 35th Leg. [1917] c. 103) pt. 1, § 12 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—21) in computing compensation for partial disability the proper method is to limit 60 per cent. of the average weekly wages to $15 per week and fix the compensation by multiplying this 60 per cent. by the percentage of disability, and not by multiplying 60 per cent. of the average weekly wages, by the percentage of disability, limiting the compensation to $15 per week.

**6. Statutes ⬅️181(1)—Other aids for construction not resorted to where intent appears from statute.**

If intent of a statute can be clearly ascertained from a reading of its provisions, and all its parts may be brought into harmony therewith, that intent will prevail without resort to other aids for construction.

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Suit by Western Indemnity Company against Henry M. Milam. Judgment for defendant, and plaintiff appeals. Reformed and affirmed.

Orgain & Carroll, of Beaumont, for appellant.

Bishop, Scott & Sparks, of Gorman, and J. A. Harrison, of Beaumont, for appellee.

WALKER, J. This suit was filed by appellant to set aside an award made by the Industrial Accident Board in favor of appellee. The case was tried by the court without a jury, and on motion of appellant, he filed the following conclusion of law and fact:

"Conclusions of Fact.

"1. I find that on January 17, 1919, the Rutt Home Builders was a subscriber under the Employers' Liability Act of Texas, and on that date carried a policy of insurance with the Western Indemnity Company, which policy insured the employees of said subscriber against personal injuries sustained in course of employment under the terms and provisions of the Employers' Liability Act of Texas.

"2. That on the 17th day of January, 1919, Henry M. Milam was in the employ of said Rutt Home Builders, and as such employee was covered by said policy of insurance, which policy was legal and valid and provided for payments of compensation as fixed in said Employers' Liability Act.

"3. That on said date the said Henry M. Milam was at work for the Rutt Home Builders, and while doing his work was standing on a scaffold. The scaffold supporting him fell and threw him to the ground, a distance of about 14 feet, injuring his arm and shoulder, and such injury was sustained in course of his employment.

"4. The average weekly wages of the said Henry M. Milam was, and is, the sum of $40.-38, and he is therefore entitled to compensation at the rate of $15 per week.

"5. The said Henry M. Milam never refused to accept or receive medical treatment.

"6. I find that the said injuries to Henry M. Milam are permanent; that he is right-handed; was a carpenter by occupation; and such injuries permanently and totally incapacitate him from doing carpenter work; and, that such injuries have incapacitated him from earning any money. I find further that such injuries have resulted in the permanent loss of the use of the right arm of said Henry M. Milam, and that the injuries to his shoulder, independent of the injury to his arm, cause partial incapacity and make a percentage of incapacity of one-third or 33⅓ per cent. of his normal capacity before said injuries.

"7. That medical treatment would result in no benefit to said Henry M. Milam, but only possible benefit in the nature of medical treatment would result and be caused by an operation; that is to say, give him chloroform, and, while under its influence, forcible exercise and manipulation that would break up and fracture the causes of the ankylosis of his shoulder. The evidence of the experts in this cause is conflicting, the majority of such experts being of the opinion that such operation would be of no benefit, and might do harm. I therefore find said injuries are permanent, and decline to require such operation.

"8. I find that said Henry M. Milam is entitled to compensation at the rate of $15 per week for a period of 300 weeks from the date of his injuries, less $600 compensation paid, leaving a balance due him from the Western Indemnity Company in the sum of $3,900. It appearing to the court, however, that $15 per week is inadequate to meet the necessities of said beneficiary, I find the amount of weekly compensation should be increased and the number of weeks decreased, and that to properly meet the necessities of said Henry M. Milam the weekly compensation from the date of this

judgment should be $34.71 per week for a period of 100 weeks.

"9. The said Henry M. Milam entered into a contract with Bishop, Scott & Sparks, of Gorman, Texas, whereby he contracted and agreed to pay to said firm of attorneys for their legal services rendered, and to be rendered herein, the sum of $1,000, and in addition thereto their reasonable and necessary expenses incurred in prosecuting this claim. This contract is fair and reasonable, and is approved and allowed. The court fixes $150 as the fair and reasonable expenses of said attorneys, and fixes their total compensation at $1,150, $150 thereof to be paid out of the compensation due Milam at the date of the judgment, and the balance of $1,000 to be paid $10 each week for 100 weeks, out of weekly compensation as it accrues and is paid.

### "Conclusion of Law.

"I conclude that the award of the Industrial Accident Board rendered herein on 6th day of November, 1919, should be set aside, and the said Henry M. Milam should recover from the plaintiff, Western Indemnity Company, the sum of $3,900, of which $428.57 is now due, for which said Milam should have his execution; that the balance of $3,471.42 shall be paid at the rate of $34.71 per week for 100 successive weeks, from this date, and that said attorneys are entitled to the sum of $1,150 thereof, payable as above stated, and judgment is rendered accordingly."

[1] The court did not abuse his discretion, in his eighth conclusion of fact, by increasing "the amount of compensation by correspondingly decreasing the number of weeks" for which the same was to be allowed. On this issue, Sam A. Scott, attorney for appellee, testified:

"As I stated before, he has a wife and several children. He and his wife live together at Gorman, but I never have been to their house, but I know about his condition, having talked to him and having talked to people that know him; I know about his general condition; he does not have any income whatever.

"I know him just like I know any other man that I have business with and am with most every day; right here in the same place with him. Of course I have never went to the bank to make an examination about whether he has any funds in the bank or not, nor have I made any examination of any records to see if he has any property or anything of that kind. But I do know that he has no property of his own. One reason how I know about it is, the time his father died he left a little lot there in Gorman, and the abstract of title was brought to our office for the purpose of passing on it, and in that way I learned something of the condition of the estate.

"I can state that I know he has no income, and had none at the time he come to the office and employed us in this case; he has got no farm and he has not no livestock and he had got no business."

[2] This testimony, as a whole, was not subject to the objection that it was hearsay, and a conclusion of the witness, but was admissible on the issue of increasing the compensation to be allowed Mr. Milam, and his ability to support his family, and fully sustains the court's conclusion. Against this conclusion of fact appellant urges the further objection that Milam did not pray for the character of relief granted him by the court. His prayer was for a lump sum settlement. He also prayed for general relief. Under his prayer for general relief the court was authorized to increase the compensation by decreasing the number of weeks.

[3] The fifth, sixth, and seventh conclusions of fact are fully sustained by the testimony. Milam never refused "to accept or receive" medical treatment. He did refuse to submit himself to the surgical operation referred to in the seventh conclusion of fact, but in doing this he was acting under the advise of skillful physicians who were treating him. The experts who testified for appellant were of opinion that such an operation would cure his arm and shoulder. Appellee's physicians were doubtful of the result of such an operation, and advised against it. As supplementing the trial court's conclusions of fact, we find that appellant requested Milam to submit to such an operation as described by the court in his seventh conclusion of fact, and offered to pay the expenses of the operation, and in connection with the offer and request informed him that Dr. Nance, the physician who had examined appellee at their request, thought the operation would result in his cure. On the issue of a separate injury to the shoulder, independent of the injury to the arm, there is the same difference of opinion in the testimony of the experts. Appellee's physicians testified to the facts sustaining the trial court's conclusion.

The court did not err in refusing to make the following findings, requested by appellant:

"I find that Henry M. Milam has the full and normal use of his body and limbs as he had before his alleged injury, except as to his right arm."

"I find that had Henry M. Milam taken proper care of himself after injury, that within eight (8) weeks' time, he would have had the normal use of his arm that he had before the injury."

"I find that his failure to take proper care of his injury, was negligence proximately causing his present condition."

These were controverted issues, and the court's conclusions against these findings are fully supported by the record.

[4] The twelfth, thirteenth, and fourteenth assignments of error only attack, in a different way, the court's conclusions of fact as to the injuries suffered by Mr. Milam. However, appellant advances this additional proposition under its fourteenth assignment of error:

"Said conclusion of law that compensation at the rate of $34.71 per week for 100 succes-

sive weeks should be paid, is erroneous in that the board, having increased the weekly payments and decreased the number of weeks in a corresponding manner, should have allowed said Western Indemnity Company the usual discount for such character of payment, and its failure to do so is prejudicial error, and erroneous."

We have sustained the trial court's judgment increasing the amount of compensation and decreasing the number of weeks. This character of judgment is authorized under section 15a, pt. 1, of the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246–34), which is as follows:

"In any case where compensation is payable weekly at a definite sum and for a definite period, and it appears to the board that the amount of compensation being paid is inadequate to meet the necessities of the beneficiary, the board shall have the power to increase the amount of the compensation by correspondingly decreasing the number of weeks for which the same is to be paid, allowing such discount to the company increasing such payments as is applicable in cases of lump sum settlement."

Section 15, pt. 1 (article 5246—33), authorizing a lump sum settlement, is as follows:

"In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board hereinafter created. This section shall be construed as excluding any other character of lump sum settlement save and except as herein specified; provided, however, that in special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board may compel the association in the cases provided for in this section to redeem their liability by payment of a lump sum as may be determined by the Board."

This act limits the amount of compensation to be paid an employé, in the following language:

"For the injuries enumerated in the following schedule the employé shall receive in lieu of all other compensation except medical aid, hospital services and medicines as elsewhere herein provided, a weekly compensation equal to sixty per cent. of the average weekly wages of such employé, but not less than $5.00 per week, nor exceeding $15.00 per week, for the respective periods stated herein." Paragraph 1, § 12, pt. 1 (article 5246—21).

From these quoted sections of this act, it seems to us that the Legislature must have contemplated that a discount would be allowed when a lump settlement is awarded. A discount is required when the compensation is increased and the number of weeks is decreased. In this latter event, it is provided that the board shall allow "such discount to the company increasing such payments as is applicable in cases of lump sum settlements." Under section 15:

"The board may compel the association in the cases provided for in this section to redeem their liability by payment of a lump sum as may be determined by the Board."

In the face of the first paragraph of section 12, quoted above, clearly the board could not require a lump sum in excess of the aggregate sum of weekly payments. A present payment of $3,471 is a larger sum that $3,-471 paid in 300 weekly installments, and 100 weekly installments of $34.71 each is a larger payment than $3,471 paid in 300 weekly installments. By empowering the board to determine the amount of the lump sum settlement in section 15 and in section 15a, giving this same board power to increase the amount of compensation by decreasing the number of weeks, and providing for a discount, referring to lump sum settlements, we cannot escape from the conclusion that a lump sum settlement necessarily must be awarded on the basis of a discount to be determined by the board. The Industrial Accident Board has so construed this section, and, as we understand, uniformly allows a 5 per cent. discount. Lumberman's Reciprocal Ass'n v. Behnken, 226 S. W. 154.

The court's remark in this Behnken Case:

"Our Compensation Law does not provide that a discount must be allowed when the liability is redeemed in a lump sum, and it would be entering the legislative field for a court to undertake to read that requirement into the statute"

—seems to us to be an obiter statement, and hence we do not consider it an authoritative construction of section 15, though we have the greatest respect for all the conclusions reached by this able court.

[5, 6] We cannot agree with appellee in his construction of that paragraph of section 12, pt. 1, of this act, reading as follows:

"In all other cases, partial incapacity, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employé, compensation shall be determined according to the percentage of incapacity, taking into account, among other things, any previous incapacity, the nature of the physical injury or disfigurement, the occupation of the injured employé and the age at the time of the injury; the compensation paid therefor shall be sixty per cent. of the average weekly wages of the employé, but not to exceed $15.00 per week, multiplied by the percentage of incapacity caused by the injury, for such period as the board may determine not exceeding 300 weeks."

Under this paragraph, appellee contends, by cross-assignment, that the amount of compensation for partial disability should be determined by multiplying 60 per cent. of the average weekly wages by the percentage of disability, limiting the compensation to $15 per week, and as sustaining him, cites the fact that this is the construction placed on this paragraph by the Industrial Accident

Board. He concedes that this construction requires that the paragraph be read as if the clause "but not to exceed $15 per week" followed the words "multiplied by the percentage of incapacity caused by the injury," but insists that it effectuates the true purpose of the Legislature, which was to fix the maximum compensation in all cases at $15 per week. But—

"The statute itself furnishes the best means of its own exposition; and if the intent of the act can be clearly ascertained from a reading of its provisions, and all its parts may be brought into harmony therewith, that intent will prevail, without resort to other aids for construction." Lewis' Sutherland, Statutory Construction (2d Ed.) § 348.

A literal construction of this paragraph does not bring it in conflict with any other part of the act. It follows, then, that we should give it that meaning its reading imports, which is to limit 60 per cent. of the average weekly wages to $15 per week and fix the compensation by multiplying this 60 per cent. by the percentage of disability.

The error of the court in refusing to discount the total compensation on the settlement allowed does not require a reversal of the case, but the judgment is here so reformed as to allow the usual 5 per cent. discount, reducing the payments from $34.71 per week to $32.78 per week, and, as so reformed, it is affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes