**FIRST NAT. BANK OF STEPHENVILLE v. THOMPSON et al. (No. 4055.)**

(Commission of Appeals of Texas, Section A.
Nov. 12, 1924.)

**1. Chattel mortgages ⬤═153—Company trading for automobile held not good-faith purchaser within statute relative to chattel mortgages.**

Company trading for automobile with knowledge that person with whom it dealt was member of particular firm in another county, lived there, and was their agent for cars of the kind traded for, *held* charged with constructive notice of chattel mortgage there recorded, and not a good-faith purchaser under Vernon's Sayles' Ann. Civ. St. 1914, art. 5655.

**2. Chattel mortgages ⬤═188(2)—Mortgage on stock of automobiles and accessories remaining in mortgagor's possession held void notwithstanding secret agreement.**

Mortgage given by filling station on stock of accessories and automobiles in its possession for sale, *held* void under Vernon's Sayles' Ann. Civ. St. 1914, art. 3970, notwithstanding secret agreement that no automobiles would be sold except after consulting mortgagee.

**3. Chattel mortgages ⬤═188(2)—Automobile held "goods, wares, or merchandise," within statute.**

Automobile *held* goods, wares, or merchandise, within Vernon's Sayles' Ann. Civ. St. 1914, art. 3970, relating to chattel mortgages of goods, wares, and merchandise exposed to sale.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Goods.]

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by the First National Bank of Stephenville against A. J. Thompson and others. Judgment for plaintiff for less relief than demanded was affirmed by the Court of Civil Appeals (251 S. W. 818), and plaintiff brings error. Affirmed.

Chandler & Pannill, and A. P. Young, all of Stephenville, for appellant.

James & Conner, of Fort Worth, for appellees.

───────────────────────

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

CHAPMAN, J. On March 12, 1921, A. J. Thompson, R. E. Thompson, and W. B. Yeager, as partners under the trade-name of Service Filling Station, were at Stephenville, Erath county, Tex., engaged as retail dealers in automobile accessories, gasoline, oil, etc., and in selling and trading automobiles, and were the local agents for the Essex and Hudson automobiles. On the date mentioned, the Service Filling Station executed to the First National Bank of Stephenville a chattel mortgage on all of its fixtures, and all of its stock of merchandise, including a certain Essex car identified by its engine number. This mortgage was executed to secure a pre-existing indebtedness of $7,375. There was a verbal agreement between the bank and the filling station that the filling station should secure the consent of the bank before they actually made the sale of an automobile, but the record does not show that the agreement applied to any other of the mortgaged property. The stock of merchandise, including the automobiles, was exposed and offered for sale the same as before the execution of the mortgage, and the only difference in the conduct of the business of the Service Filling Station after the execution of the mortgage, as compared to the way the business was conducted before its execution, was, that before the filling station would make sale of an automobile, the bank would be consulted in regard to the deal. The mortgage was filed for record in Erath county March 25, 1921. On April 12, 1921, A. J. Thompson, one of the partners, took the Essex automobile above mentioned to Fort Worth and traded it to the Fain-Bender Motor Company of that place without consulting the bank. At the time of this trade the Fain-Bender Motor Company knew that A. J. Thompson was a member of the partnership, the trade-name of which was Service Filling Station, and that said partnership was engaged in business at Stephenville, Erath county, and that said partners were local agents at Stephenville for the Hudson and Essex automobiles. The First National Bank of Stephenville sued the Service Filling Station for its debt, and for foreclosure of its chattel mortgage, and made the Fain-Bender Motor Company a party, and alleged that it had converted the Essex automobile, and asked for judgment against it for the value of said car. The judgment of the trial court was in favor of the Fain-Bender Motor Company, which judgment was affirmed by the Court of Civil Appeals of the Fourth District (251 S. W. 818), on the ground that the chattel mortgage was void under the provisions of both articles 3970 and 5655 of the Revised Civil Statutes.

We will first consider whether the mortgage under the facts was void under the provisions of article 5655. The portion of said article relating to the case is as follows:

"Every chattel mortgage, deed of trust, or other instrument of writing, intended to operate as a mortgage of or lien upon personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the property mortgaged or pledged by such instrument, shall be absolutely void as against the creditors of the mortgagor or person making same, and as against subsequent purchasers and mortgagees or lienholders in good faith, unless such instrument, or a true copy thereof, shall be forthwith deposited with and filed in the office of the county clerk of the county where the property shall then be situated. * * *"

[1] The representative of the Fain-Bender Motor Company at Fort Worth, at the time he traded with Thompson for the Essex automobile, knew that Thompson lived at Stephenville, Erath county, and that he was the agent at that place for Essex cars, and knew that Thompson had driven the car from Stephenville to Fort Worth, and that the car was out of Erath county only temporarily, and, under these facts, the Fain-Bender Motor Company had constructive notice of the mortgage that was on record in Erath county covering the automobile that it traded for, and it would therefore not be a purchaser in good faith under the terms of article 5655. We think that this proposition is clearly sustained by the following authorities: Griffith & Wedge v. Morrison and Matthews, 58 Tex. 46; Stewart & Alexander Lumber Co. v. Miller & Vidor Lumber Co. (Tex. Civ. App.) 144 S. W. 343; Brinberry et al. v. White (Tex. Civ. App.) 167 S. W. 205; Vickers v. Carnahan et al., 4 Tex. Civ. App. 305, 23 S. W. 338; Moore et al. v. Masterson, 19 Tex. Civ. App. 308, 46 S. W. 855; Matthew Wilson, Jr., v. Benjamin F. Leslie, 20 Ohio, 161; M. C. McVay v. John M. English, 30 Kan. 368, 1 P. 795.

[2] Article 3970 is as follows:

"Every mortgage, deed of trust, or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise, daily exposed to sale, in parcels, in the regular course of the business of such merchandise, and contemplating a continuance of the possession of said goods and control of said business, by sale of said goods by said owner, shall be deemed fraudulent and void."

Under the facts stated, the chattel mortgage in this case was void under this statute, unless the verbal agreement between the bank and the Service Filling Station at the time of the execution of the mortgage so affected the control of the Essex automobile as that it did not come within the provisions of this statute, or unless automobiles are not such goods, wares, or merchandise, that come within its provisions. There was nothing in the written mortgage that was placed of record to put third parties on any notice that there was any verbal agreement of any kind between the bank and the Service Filling

Station that would make any difference in the way automobiles were handled by the filling station after the execution of the mortgage, and nothing to show that the bank had any control whatever over the sale of the automobiles by the filling station, and nothing to show that there was any more restriction on the sale of the automobiles than there was on the other portion of the stock of merchandise that was being offered for sale. This partnership was known in Stephenville and in that territory as the local agents of the Essex cars, and they had at their place of business large signs proclaiming that fact to the public and these facts were all known to the First National Bank, and under these facts the public was justified in believing that the partnership kept the Essex automobile daily exposed to sale in the regular course of the business of such merchandise. The automobiles continued in the possession of the partnership, and they continued in control of said business, and continued to offer the automobiles for sale, and, under these conditions, we do not think that the secret verbal agreement between the bank and the partnership could defeat the object of the statute under consideration. In the case of the National Bank of Texas v. I. Lovenberg, 63 Tex. 506, where the verbal agreement was very similar to the one in this case, and where the bank placed a representative at the place of business of mortgagor, our Supreme Court made this statement:

"The object of the statute would be defeated if, by a secret agreement between the parties, which they could not incorporate in a mortgage without invalidating it, creditors could be deprived of all recourse against the property mortgaged in fraud of the statute.

"And so as to agreements that the mortgagor shall remain in possession and control of the business as agent of the mortgagee. The validity of a mortgage with such an agreement attending its execution must depend solely upon whether or not the effect is to allow the business to be continued under control of the mortgagor in the same manner as before the instrument was made. This is the result which the law proposes to prevent, and it cannot be thwarted of its object by any verbal agreement that brings about practically the prohibited effect. * * *

"A merchant, if embarrassed and unable to continue his business and pay his debts, must not bargain with some creditor for a continuation of his business and a control of his stock, upon an agreement to pay such creditor's debt out of the sale of goods in the usual course of business. He must not continue business as before, protected by a mortgage which gives him the privileges of a merchant and saves his stock from being responsible for the debts of creditors generally."

This case is cited and approved in Duncan, Wyatt & Co. v. Taylor, 63 Tex. 645; Wilber v. Kray, 73 Tex. 533, 11 S. W. 540; B. F.

Avery & Sons v. Waples, 19 Tex. Civ. App. 672, 49 S. W. 151; Wright et al. v. Texas Moline Plow Co. et al., 40 Tex. Civ. App. 434, 90 S. W. 905; and J. I. Case Threshing Machine Co. v. Lipper (Tex. Civ. App.) 181 S. W. 236.

[3] Wagons, buggies, and farm implements, have been treated by our appellate courts as stocks of goods, wares, or merchandise under this statute, and we can see no good reason why automobiles should not also be so treated. We think that the Court of Civil Appeals correctly held under the facts that the mortgage in this case was obnoxious to the provisions of article 3970, and therefore recommend that the judgment of that court and of the district court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.