## TEXAS BANK & TRUST CO. v. TEICH et al. (No. 6953.)*

(Court of Civil Appeals of Texas. Austin. March 3, 1926. Rehearing Denied March 31, 1926. Motion to File Second Motion For Rehearing Overruled April 28, 1926.)

1. **Chattel mortgages** ⊕⟿188(2), 196—**Fraudulent conveyances** ⊕⟿47—**Automobile dealer's mortgage or trust receipt, under which bank asserted claim to and took possession of automobile, for price of which mortgagor was indebted, held void as to creditor under fraudulent mortgage, bulk sales, and registration statutes (Rev. St. 1925, arts. 4000, 4001, 5489, 5490).**

Automobile dealer's mortgage or trust receipt, under which bank asserted claim to and took possession of automobile, for purchase price of which mortgagor was indebted, held void as to creditor as in violation of fraudulent mortgage and bulk sales statutes (Rev. St. 1925, arts. 4000, 4001), and because not registered as required by articles 5489, 5490.

2. **Fraudulent conveyances** ⊕⟿182(5), 321(2) **—Execution creditor has no preference lien over other creditors of seller or transferor of property in violation of Bulk Sales Law, but transferee holds as trustee for all creditors (Rev. St. 1925, art. 4001).**

Sale or transfer in violation of Bulk Sales Law (Rev. St. 1925, art. 4001) is not wholly void, so as to pass no title to transferee, and gives execution creditor of transferor no preference lien over other creditors; transferee holding property as trustee for all creditors on same conditions.

3. **Fraudulent conveyances** ⊕⟿47.

Conveyances in violation of Bulk Sales Law (Rev. St. 1925, art. 4001) are void only when attacked by creditors whose rights have been ignored.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by E. A. Teich and others against the Texas Bank & Trust Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded, with directions.

Robert B. Thrasher and Victor Gleckler, both of Austin, for appellant.

Cofer & Cofer, of Austin, for appellees.

BLAIR, J. This suit arose as the result of the following facts and transactions:

Prior to June 16, 1923, the Central Texas Motor Company was engaged in the business of selling automobiles at retail in the city of Austin, and prior to this date it became indebted to appellee in the sum of $450, representing the price of a Ford automobile which it purchased from her. On June 16, 1923, the following agreement was executed by the Central Texas Motor Company with appellant, Texas Bank & Trust Company:

---

⊕⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused May 19, 1926.

"Austin, Texas, June 16th, 1923.

"This is to certify that we hold in trust for the Texas Bank & Trust Company of Austin, Tex., the following described property and merchandise: One Durant sport model touring car. At the time of the issue of this trust receipt it is represented by the undersigned that the above car was solely the property of the Texas Bank & Trust Company, and that no other person has any interest therein. We hereby agree to keep the above car stored for the benefit of the Texas Bank & Trust Company, fully insured against loss by fire, and that the proceeds of the sale will be turned into said bank in payment of our note for $983.12 of even date herewith, which money is furnished us for the purpose of unloading said cars, and on the express condition that the title to said cars shall remain in the Texas Bank & Trust Company until our note above referred to has been fully paid. In default of the payment of the above note to said bank, its agent or attorney is hereby authorized to take charge of said cars, and to sell same at private or public sale, and to apply the proceeds to the payment of the above obligation. It is represented by the undersigned that the above cars have a value of $983.12."

This instrument was not filed for registration. An issue was submitted to the jury in connection with this transaction, and they found that the Durant automobile described was delivered to the possession of the Central Texas Motor Company subsequent to June 16, 1923. Thereafter, and in accordance with the terms of the trust receipt, the Durant automobile was delivered to the Texas Bank & Trust Company upon the following agreement and contract:

"July 18, 1923, in cancellation of certain amount of our indebtedness to the amount of $5,000 due the Texas Bank & Trust Company of Austin, we, the Central Texas Motor Company, a corporation, acting by and through its president, W. C. Arnett, do hereby deliver to said bank in accordance with certain trust receipts heretofore executed by said company to said bank the following described car, to wit: one Durant sport touring car, motor No. 122911; one Durant sport roadster, motor No. 27036; one Durant Six touring car, motor No. 13539; one Durant coupé, motor No. 33876; one Durant touring car Four, motor No. 35062. "[Signed] Central Texas Motor Company,
                "By W. C. Arnett, President."

The testimony is undisputed that on this date, July 18, 1923, the Central Texas Motor Company closed its doors and ceased to do business thereafter. The testimony is also undisputed that as to this transfer no effort was made to comply with the provisions of the Bulk Sales Law.

The appellant bank on the same date of this instrument took charge of the automobile in question and stored it at Miller's Garage, in the city of Austin, in its name, and paid thereafter the storage charges on it. On November 10, 1923, the appellee recovered a final judgment against the Central Texas Motor Company for the sum of $463.50, with interest and costs, on which an execution was issued December 18, 1923, and the sheriff levied upon the Durant automobile in controversy. On the 20th of March, 1924, appellant bank filed its claimant's oath and bond with the sheriff, who surrendered the automobile to it.

Appellee brought this suit, setting up the judgment as a basis of her claim against the Central Texas Motor Company, and alleging that, by virtue thereof she was a bona fide creditor of said company prior to the 16th day of June, A. D. 1923, and prior to July 18, 1923, and, further, that the alleged transfer pleaded by the appellant bank was violative of article 4000, R. S. 1925, relating to fraudulent mortgages, and article 4001, R. S. 1925, relating to the Bulk Sales Law, and that the trust receipt described was not filed for registration. She also alleged:

"That the said Texas Bank & Trust Company, not having thus conformed to the provisions of the law, upon application of this plaintiff became in law a receiver and became accountable to plaintiff for such merchandise, to wit, the automobile in controversy, so coming into its possession by virtue of such alleged sale and transfer, and that plaintiff is now seeking to enforce such accountability under the law by the judgment, execution, and levy hereinbefore alleged."

Appellant's brief correctly states its defensive pleadings as follows:

"Appellant answered by general demurrer, special exceptions, and general denial, and setting up a trust agreement bearing date the 16th day of June, 1923, whereby it was stated that Central Texas Motor Company held the automobile levied upon by appellee in trust for appellant, and that the same was solely the property of appellant; that the said automobile would be stored for appellant, and when the car was sold the proceeds were to be turned over to appellant in payment of a note for $983.12, which money was furnished the motor company for the purpose of unloading said car; that on the 18th day of July, 1923, said automobile was delivered to appellant in accordance with said trust receipt; that at the time said automobile was levied upon by appellee it did not belong to Central Texas Motor Company, but was the property of appellant, and appellant was entitled to the possession thereof, and that appellant's claim to the property was made in good faith."

The trial judge concluded upon the undisputed facts and the jury's findings of fact that the transactions of appellant, Texas Bank & Trust Company, with the Central Texas Motor Company as above detailed were void because violative of the fraudulent mortgage statute, the bulk sales law statute, supra, and of the registration laws, and in effect declared appellee to have a preference lien on the sport model Durant touring car, by virtue of the levy of her execution, and rendered judgment for her against appellant for the full amount of her claim, conditioned,

however, upon appellant bank producing the automobile for which it executed its claimant's bond.

[1] The trial court correctly held under the undisputed facts and findings of fact by the jury that the mortgage or trust receipt, under which appellant bank asserts its claim of right to the automobile, and under the terms of which it took possession, is void as to appellee, because such transactions were violative of articles 4000 and 4001, R. S. 1925, supra, and because the trust receipt or mortgage had not been registered. The following authorities support this conclusion: Article 3970, R. S. 1911 (article 4000, R. S. 1925); article 3971, R. S. 1911 (article 4001, R. S. 1925); articles 5654 and 5655, R. S. 1911 (articles 5489 and 5490, R. S. 1925); Beene v. Nat. Liquor Co. et al. (Tex. Civ. App.) 198 S. W. 596; Gen. Motors Acceptance Corp. v. Boddeker (Tex. Civ. App.) 274 S. W. 1016; First Nat. Bank of Stephenville v. Thompson (Tex. Com. App.) 265 S. W. 884; Bowen v. Lansing Wagon Works, 43 S. W. 872, 91 Tex. 385.

[2] The trial court erred in holding the sale or transfer to be wholly void so as to pass no title to appellant in the automobile, that it remained the property of Central Texas Motor Company on the date of the levy of appellee's execution, and that she obtained a preference lien over other creditors thereby, for, under article 4001, appellant, not having complied with the provisions of the Bulk Sales Law, held the automobile as trustee for all the creditors and upon the same conditions.

[3] Conveyances not made in conformity to the Bulk Sales Law (article 4001) are not absolutely void, but are so only when attacked by creditors whose rights have been ignored. In the case of Hall v. Conine (Tex. Civ. App.) 230 S. W. 825, it is held:

"The purpose of that statute is to protect creditors against injurious discriminations by debtors. The right to defeat a conveyance made in violation of the statute, by means of a writ of garnishment or in any other manner, is not given to enable the attacking creditor to secure an advantage in the distribution of assets. He cannot convert a defensive remedy into an offensive weapon. The grantee, whether he be a creditor or a trustee, is to be treated as holding for the benefit of all the creditors and upon the same conditions. The most that the bank may here claim is the right to share upon equal terms with the other creditors."

In the case of Hay et al. v. Behrens Drug Co. (Tex Civ. App.) 214 S. W. 940, this court held the practical effect of the 1915 amendment to article 3971, R. S. 1911 (article 4001, R. S. 1925), was to make a noncomplying purchaser a receiver for the benefit of creditors and to make him personally liable only where he had disposed of the goods.

It is undisputed that appellant bank had not disposed of the automobile, for appellee levied an execution upon it. Appellant gave bond for its forthcoming in this case. Both the pleadings and the proof show the suit to be one involving the rights of an attaching or execution creditor under article 4001, R. S. 1925, known as the Bulk Sales Law. In fact, appellee does not otherwise state a cause of action against appellant. That law does not give her a preference lien or claim on the automobile levied upon in the hands of the purchaser who did not comply with it; but the purchaser holds it as trustee for all creditors upon the same conditions. Both the pleadings and the testimony show her only entitled to share pro rata with other creditors, including the purchaser, and upon the same conditions. Therefore the judgment is fundamentally wrong in this respect, and we reverse and remand the cause, and direct that, when her pro rata interest as a creditor of the Central Texas Motor Company is ascertained in the automobile levied upon and so conveyed in violation of the Bulk Sales Law, that judgment be rendered for her for that amount against appellant and its bondsmen.

Reversed and remanded, with instructions.

## On Motion for Leave to File Second Motion for Rehearing.

On the motion for leave to file second motion for rehearing by appellees, we have concluded that it should be denied. As basis for the second motion counsel insist that our opinion, holding a purchaser of merchandise in violation of the Bulk Sales Law as trustee for the benefit of all creditors and upon the same condition, and liable to them to the extent of the value of the property received pro rata, is in conflict with the decisions in Owosso Carriage & Sleigh Co. v. McIntosh, 179 S. W. 257, 107 Tex. 307, L. R. A. 1916B, 970; Kell Milling Co. v. Wooten (Tex. Civ. App.) 195 S. W. 342; and Gardner v. Goodner, 256 S. W. 911, 113 Tex. 423. The contention is without merit.

The Supreme Court in Owosso Carriage Co. Case held, first, that the Bulk Sales Law was constitutional as an exercise of the police power of the state, and, second, that a creditor might reach through garnishment proceedings the proceeds of goods sold in violation of the Bulk Sales Law; distinguishing that procedure from former decisions of the Supreme Court in the cases of Blum v. Goldman, 1 S. W. 899, 66 Tex. 623, and Le Gierse v. Kellum, 18 S. W. 509, 66 Tex. 243, in which cases it was held that a creditor of an insolvent debtor could not by a direct proceeding, without the aid of garnishment, attachment, or other similar process, obtain a personal judgment against the purchaser, even though he purchased for the purpose of hindering, delaying, or defrauding creditors. As to the amount of liability the court simply held, as did all courts prior to the 1915 amendment to the Bulk Sales Law, which makes a pur-

chaser in violation of it a receiver, that the attaching creditor was entitled to the full amount of his debt, if the property attached was of that value. But the amendment now fixes the purchaser's liability at the value of the property purchased pro rata to all creditors.

The Gardner v. Goodner Case, supra, by the Commission of Appeals, and cited as being in conflict with our decision, is a thoroughly well-considered case, and completely sustains our decision with respect to the liability of a purchaser of merchandise in violation of the Bulk Sales Law as amended in 1915. We quote from this opinion the following:

"The liability of a purchaser of a stock of goods and fixtures in violation of the Bulk Sales Law is that of a receiver. Having taken the property subject to the rights of creditors, he becomes bound in equity to see that the property or its value is appropriated to the satisfaction of claims of the creditors of his seller. He becomes the trustee of an express trust, and is subject to the same duties and liabilities of such a trustee. We think the law was intended to charge him with liability, however, only to the extent of the value of the property received by him; and this liability is to all of the creditors pro rata. As aptly stated by the Supreme Court of Arkansas in the case of Stuart v. Bank & Trust Co., 185 S. W. 263, 123 Ark. 285, Ann. Cas. 1918A, 268: 'The Bulk Sales Act does not make the person who fails to comply with its provisions liable for all the debts of the seller. It treats the sale as being void and the purchaser as being a receiver and his possession as being for the benefit of all the creditors. He is like any other receiver so far as his liability is concerned. He is responsible for the property purchased, but for that only. If he gets enough property to pay all the debts, he must pay them all. If the property is not sufficient for that purpose, he must pay the creditors pro rata as any other receiver would do.'"

Appellees confuse the two methods by which a creditor may, since the amendment, bring the purchaser violating the law into court, as fixing two separate and distinct methods of fixing liability, contending that, where a diligent creditor attaches the property, he should be permitted to recover the full amount of his debt, if the property is of that value, and that, on the other hand, if the creditor sues for an accounting as authorized by the statute, he is entitled to recover only pro rata with other creditors. Appellees' petition, as pointed out in our original opinion, showed a sufficient compliance with both methods of obtaining jurisdiction over the purchaser, but the court failed to charge the purchaser with the only liability which the statutes imposed upon it, that of accounting to all the creditors for the value of the property received pro rata. The mode and manner of fixing the liability and of adjusting the rights of all creditors is clearly and well set forth in Gardner v. Goodner, supra.

The Kell Milling Company Case, supra, did not take into consideration the 1915 amendment to the Bulk Sales Law, which fixed the liability of a purchaser as that of a trustee. The issue involved in that case, and for which the case was reversed, was that the court was in doubt as to the sufficiency of the testimony to sustain an allegation that the debtor had transferred his merchandise to the purchaser as trustee for the benefit of his creditors, and a new trial was ordered to establish that fact.

The contentions set out in the motion for leave to file second motion for rehearing are without merit, and the motion will be refused and denied in all things.

Motion refused.