**LUMBERMEN'S RECIPROCAL ASS'N v. BEHNKEN et al. (No. 7952.)***

(Court of Civil Appeals of Texas. Galveston. Nov. 11, 1920. Rehearing Denied Dec. 16, 1920.)

**1. Master and servant ⟨⟩371—"Arising out of employment" and "course of employment," within Workmen's Compensation Act, defined.**

The expression "arising out of the employment," as used in Workmen's Compensation Act, implies some causal connection between the conditions under which the employee works and the injury, while the expression "in the course of the employment" refers to the time, place, and circumstances of the accident, and the two comprehend distinct and separate elements of the right to recovery.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

**2. Master and servant ⟨⟩371—Causal connection between employment and injury not required by Workmen's Compensation Act; "course of employment."**

Under Workmen's Compensation Act, pt. 1, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246–1), providing compensation for injuries sustained in the course of the employment and death resulting therefrom, without requiring that the injury arise out of the employment, and part 4, § 1 (article 5246–82), defining injuries sustained in the course of employment, no direct causal connection between the employment and the injury is required; it being sufficient that it had to do with and originated in the employer's business and that the employé at the time was engaged in or about the furtherance of the employer's affairs.

**3. Master and servant ⟨⟩348—Workmen's Compensation Act construed liberally.**

Workmen's Compensation Acts are remedial measures and are given a broad and liberal construction in order that the humane purpose of their enactment may be realized.

**4. Master and servant ⟨⟩375(2)—Employé returning to work by employer's private way when struck by train held injured in "course of employment" within Workmen's Compensation Act.**

Where an entire town, probably, including a railroad track running through it, was on the employer's land, and the only well-defined crossing over the railroad track was a more or less private way leading to the employer's various buildings, and an employé who had gone home for dinner, as was customary, was returning to his work by such private way in the usual routine of his service when struck by a train, the injury was sustained in the course of the employment, though the employer had nothing to do with such train.

**5. Master and servant ⟨⟩417(9)—Court may award lump sum compensation, though question not presented to board.**

In a compensation claimant's suit to vacate an award denying relief, the district court may award a lump sum, though no such settlement

was sought before the Industrial Accident Board, as under Workmen's Compensation Act, pt. 2, §§ 1, 2, 4, 4a, 5, 5a, and 10 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246–39, 5246–40, 5246–42 to 5246–45, 5246–51), the board is not a court, but an administrative agency, and a resort to the district court is not an appeal, but a substitution of its plenary power for that of the board upon a trial de novo.

**6. Master and servant ⟨⟩418(5)—Lump sum compensation award not reviewable unless discretion abused.**

Under Workmen's Compensation Act 1917, pt. 1, § 15 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246–33), authorizing lump sum awards in special cases where manifest hardship and injustice would otherwise result, what constitutes such a special case is left to the determination of the board or district court, and the exercise of such discretion will not be reviewed where no abuse appears.

**7. Master and servant ⟨⟩386(4)—Lump sum compensation award not abuse of discretion.**

Where a deceased employé's widow was left without property of any kind and with seven small children not old enough to assist in earning a living, and four of whom were under five years of age, an award of a lump sum was not an abuse of discretion, especially where the oldest children would in a few years be able to increase the family earnings.

**8. Master and servant ⟨⟩386(4)—Discount of lump sum compensation award at rate of 5 per cent. not misuse of authority or abuse of discretion.**

Under Workmen's Compensation Act 1917, pt. 1, § 15a (Vernon's Ann. Civ. St. Supp. 1918, art. 5246–34), implying that the Industrial Accident Board may allow some discount in case of a lump sum settlement, it was not a misuse of authority or an abuse of discretion for the district court to discount the weekly payments of death benefits at the rate of 5 per cent., according to a standing rule of the board, instead of 6 per cent., the legal rate of interest.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Proceeding under the Workmen's Compensation Act by Mrs. Josie Behnken and others for compensation for the death of L. Behnken, husband of the named petitioner, opposed by the Hartburg Lumber Company, employer, and Lumbermen's Reciprocal Association, insurer. Compensation was denied by the Industrial Accident Board, but granted by the district court, and the insurer appeals. Affirmed.

Andrews, Streetman, Logue & Mobley, and E. J. Fountain, Jr., all of Houston, for appellant.

Jas. A. Harrison, of Beaumont, for appellees.

GRAVES, J. Mrs. Behnken for herself and children brought this suit in the court below

to set aside an award of the Industrial Accident Board decreeing that they take nothing as a result of the death of L. Behnken, husband and father, respectively, of the claimants. Trial before the court without a jury was had upon an agreed statement of facts, the first six specifications of which in full are these:

"(1) The plaintiffs are Mrs. Josie Behnken in her own right and as next friend of Louise Behnken, age four years, Richard Behnken, three years, Carroll Behnken, age two years, and Thomas Behnken, age about two months. All of the plaintiffs reside in Newton county, Tex. The plaintiffs are the sole and exclusive beneficiaries of L. Behnken, deceased. The defendant is a reciprocal insurance association duly organized and existing under the laws of Texas and having its domicile and principal office in Houston, Harris county, Tex. The plaintiff Mrs. Josie Behnken was married to L. Behnken in 1915, and she and L. Behnken lived together continuously as man and wife until his death. As a result of this marriage plaintiff and L. Behnken had four children, Louise, Richard, Carroll, and Thomas Behnken, all of whom are minors.

"(2) On June 5, 1919, Hartburg Lumber Company was operating a sawmill at Hartburg, Tex. On this day Hartburg Lumber Company was a subscriber under the Workmen's Compensation Law [Laws 1917, c. 103 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91)]; and had in full force and effect a policy of insurance with defendant herein, conditioned to pay to the employés and their beneficiaries, in case of death, of Hartburg Lumber Company, such compensation as is provided for in the Workmen's Compensation Law of Texas.

"(3) Hartburg Lumber Company employed at its plant at Hartburg about 75 men. The town of Hartburg consists of the plant, storehouse, office, boarding house, and residences for the employés of Hartburg Lumber Company. The railroad track of the Kansas City Southern Railway Company runs through the town so that the sawmill, store, boarding house, and some quarters for negroes and Mexicans are on the north side of the track, and the residences for the white employés are on the south side of the track. The property on the north side and the property on the south side of the track are in close proximity to each other, being only a few hundred feet apart. A dirt road running from Lemonville to Ruliff runs on the south side of the railroad track and in front of the house for white employés. There is a crossing off of this road, west of the store, over the railroad track, and leading to the various buildings making up the group of properties owned by the lumber company. The railroad track is not fenced, but the road crossing was the only crossing well defined over the track. It was an ordinary dirt road crossing.

"All of the residences in the town of Hartburg are controlled by the Hartburg Lumber Company and are rented to the employés of that company by the month for a cash consideration. All of the houses are on the company premises, and there are no houses and residences at Hartburg other than those owned and controlled by the Hartburg Lumber Company. The road, however, running in front of the houses and south of the railroad track, is a public road; but the crossing over the railroad track is more or less private, but is used by any member of the public desiring to go to any part of the mill, store, or boarding house.

"The employés of the Hartburg Lumber Company did not bring their dinner or other meals to their work; but it was customary for them to go to their homes or to the boarding house, according to the place at which they lived, for their meals. The white employés who occupied the residences south of the railroad track went to their home for their meals at the noon hour, and in so doing they necessarily had to cross the railroad track.

"(4) On June 5, 1919, L. Behnken, the husband and father, respectively, quit his work at noon at the usual hour, went home to get his dinner, had dinner, and started back to his work where he was due at one o'clock. He started back at his usual time, and while crossing the railroad track at the dirt road crossing was accidentally struck and killed by a railroad train operated over the Kansas City Southern Railway Company's tracks. This train did not stop at Hartburg, and had nothing to do with the Hartburg Lumber Company.

"(5) In addition to the wife and minor children named above the plaintiff Mrs. Josie Behnken has three other children by a former husband, the oldest of whom is 14 years of age. None of these children are old enough or strong enough to work and assist in earning a living to support the family. In a few years these children will be able to increase materially the family earnings. Mrs. L. Behnken and children have no property.

"(6) The Hartburg Lumber Company and the Lumbermen's Reciprocal Association both had immediate notice and were duly notified of the injuries to and death of said L. Behnken, and the plaintiff for herself and minor children duly filed claim for compensation within the time required by law on account of the death of said L. Behnken, with the Industrial Accident Board, at Austin."

Then follow stipulations 7 to 9, inclusive, reciting that the Accident Board on September 26, 1919, entered its final ruling on the claim, holding that the deceased was not engaged in the course of his employment at the time he sustained the fatal injury; that the claimants had made a fair and reasonable contract to pay their attorney 30 per cent. of any recovery in case of a trial, and had, within the 20 days allowed by the Workmen's Compensation Law of 1917, given proper notice of their refusal to abide by the board's decision and filed this suit in court. Concluding, paragraph 10 of the statement is as follows:

"(10) L. Behnken was an employé of the Hartburg Lumber Company and worked six days every week as lumber grader at the sawmill exclusive of Sundays and worked on every Sunday generally as fireman, but sometimes doing other work for the company at the plant. The company paid him $3.50 per day for each day's work including Sundays. L.

Behnken had been in the employ of the Hartburg Lumber Company three or four months, and was receiving the same pay as others received for the same class of work. On the day he was killed he was performing duties of lumber grader. The man who took his place after his death does not work as fireman on Sundays.

" 'Exhibit A' attached hereto shows the approximate location and relation of the premises involved herein."

The trial below, under a specific finding that Behnken received his injuries while in the course of his employment, resulted in a judgment for plaintiffs for the lump sum of $3,833, 30 per cent. of which was allotted to their attorney. The defendant Lumbermen's Reciprocal Association appeals.

Three contentions are presented here by appellant:

(1) That deceased's injuries were not received in the course of his employment.

(2) Even if the injuries were so received, the court erred in awarding compensation in a lump sum.

(3) If liable at all, and for a lump sum, appellant was at least entitled to a discount equal to the legal rate of interest in Texas upon the weekly payments, instead of a 5 per cent. discount under a rule derived from another state (New Jersey).

The first of these suggestions embodies a question not without its difficulties. Our Compensation Law of 1917 provides its benefits "for personal injuries sustained by an employe in the course of his employment, or for death resulting from personal injury so sustained." Acts of 1917, c. 103, pt. 1, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1). This expression is thereinafter followed by a definition reading, in so far as applicable here, as follows:

"The term 'injury sustained in the course of employment' as used in this act, shall not include: * * * (4) An injury caused by the employé's willful intention and attempt to injure himself, or to unlawfully injure some other person, but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employé while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Acts 1917, c. 103, pt. 4, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82).

By these provisions, therefore, must be determined the issue of whether the injuries in this instance were sustained in the course of Behnken's employment.

[1, 2] From the wording thus used it is quite apparent that our Legislature, unlike those of many of the states, declined to require that the injury must be one both "arising out of" and "sustained in the course of" the employment, thereby, and despite the definitive expression quoted, it seems to us, enlarging somewhat rather than restricting the risks our law was intended to cover. These two terms, "arising out of" and "in the course of," the first implying some causal connection between the conditions under which the employé works and the injury, the second having reference to the time, place, and circumstances under which the accident takes place, comprehend distinct and separate elements of the right to recover, and, under statutes coupling them together, it is held both must be concurrent and simultaneous. Sugar Co. v. Shraluka, 64 Ind. App. 545, 116 N. E. 330; Westman's Case, 118 Me. 133, 106 Atl. pp. 536, 537, pars. 9 and 10. Plainly here, then, by the direct language of the Texas act there need be no direct causal connection between the actual employment and the injury, the statute in this particular being satisfied if it be merely shown that the injury occurred in the course of the employment in the sense that it had to do with and originated in the business of the employer, the only other requirement being that the employé be at the time engaged in or about the furtherance of his employer's affairs.

[3] These compensation acts are remedial measures, ours especially so in that one of its objectives was to give relief to all employes injured in industrial pursuits in this state as against probably less than 20 per cent. who were before provided for under the old common-law actions founded upon negligence. Batson-Milholme Co. v. Faulk, 209 S. W. at page 841. Such laws—indeed, the two specific clauses now under consideration when used therein—are accordingly given a broad and liberal construction by the courts in order that the humane purpose of their enactment may be realized. Sugar Co. v. Shraluka, 116 N. E. at page 331, par. 2, and cited authorities.

[4] In the light of these rules, we conclude the trial court did not err in finding that Behnken's injuries were received in the course of his employment. He was at the time—to all intents and practical purposes, at least— virtually upon the premises of the lumber company. True, the train had nothing to do with the company, but the dirt road upon which he was caught was more or less its private way, was the only well-defined crossing over the railroad track, and led to the various buildings making up the group of its properties; indeed, the legitimate inference from and the idea inherent in this agreed statement of the situation and surroundings, it seems to us, is that the entire town, including the railroad track running through it, was located on the lumber company's land. The time was during the regular noon interval of but one hour, which was customarily utilized by the employés for the very purpose Behnken was using it to accomplish. The relation of employer and employe had in no proper sense ceased to exist during this brief respite from actual labor at the sawmill, but still subsisted. Behnken was not bent on his

own rest or refreshment, nor on any business for himself, but was following with methodic regularity the usual routine of his service at that particular place for his master. The very conditions and environments of his employment, calling for his continuous and frequent crossing of the railroad—established and sponsored by his employer, as they in fact had been—created a special hazard to which he was necessarily and constantly exposed in performing the service he was expected to render. The risk and danger—being peculiarly imminent as to employés, in consequence of their having so often each day to cross and recross the track—was therefore not one to which the general public was in like manner and degree subjected, but was in truth an incident of the employment itself; and, if the risk was one inherent in or incidental to the employment, the injury which matured it naturally and necessarily "had to do with and originated in" the business.

As we understand the current of decision touching the spirit of such laws as this, the employé does not have to be actually performing some specific duty of his employment at the precise time of the injury before it can be said to have been received "in the course of his employment," but it is quite generally held that, if he is doing something incidental to his service while on the premises of the master, the injury under such circumstances meets the requirements and is compensable. See Sugar Co. v. Shraluka and Westman's Case, supra; also, Carter v. Rowe, 92 Conn. 82, 101 Atl. 491; Milwaukee Fuel Co. v. Commission, 159 Wis. 635, 150 N. W. 998, par. 3; Rainford v. Ry. Co., 289 Ill. 427, 124 N. E. 643.

There may be cases in which a different view is taken, but this court prefers the liberal construction indicated in those herein cited.

We think the case is to be distinguished upon the facts from American Indemnity Co. v. Dinkins, 211 S. W. 949, decided by our own Court of Civil Appeals at Beaumont, upon which appellant relies. There the employe had quit work for the day, had registered off at the gates of the refinery plant under a system provided for the purpose, had left entirely the premises of his employer, and about three-fourths of a mile distant, while on his way home along a route he himself had selected late at night, for the purpose of securing rest and sleep, was killed by a passing automobile on one of the main public roads in that vicinity, which was not the only one leading to and from the plant of his employer. Obviously, it is thought, this does not parallel the situation here presented.

[5] The second contention, that error was committed in awarding a lump sum, rests partly upon the claim that the trial court could only determine such matters as had been passed upon by the Industrial Accident Board, and the record did not disclose that any such settlement had been sought before that body. These assignments are thought to be without merit and are overruled. The Accident Board is not a court, nor is it governed by the rules of pleading or evidence as administered by the courts, but is an administrative agency which acts along lines of procedure of its own selection. It is therefore not considered an appeal when a claimant, being unwilling to abide by the final ruling of the board, resorts to the courts; but thereupon the plenary power of the court, subject only to the qualification that the rights and liability of the parties shall still be determined by the provisions of the act, is substituted for that of the board upon a trial de novo. Employers' Liability Act of 1917, pt. 2, §§ 1, 2, 4, 4a, 5, 5a, and 10 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—39, 5246—40, 5246—42 to 5246—45, 5246—51).

[6, 7] In this connection appellant further argues that the intention of the law is to require payment of compensation on a weekly basis, and that the evidence here failed to disclose a case justifying the award of a lump sum. On the contrary, section 15, pt. 1, of the 1917 Act (article 5246—33) expressly provides that the insurer may be compelled to redeem its liability in a lump sum "in special cases where in the judgment of the board manifest hardship and injustice would otherwise result." Moreover, what constitutes that character of special case is left to the determination of the board, or of the trial court, as in this instance, and it has been held that the exercise of that discretion below will not be reviewed on appeal where no abuse of it has been made to appear. Ins. Ass'n v. Boudreaux, 213 S. W. 674. That no abuse of the power is shown here is plainly apparent. Mrs. Behnken was suddenly deprived of her means of support, left a widow without property of any kind, and with seven small children to raise and care for. None of them were at that time old or strong enough to work and assist in earning a living for the family, the oldest being only 14, and four of them running in a sort of stepladder fashion from a maximum of 4 years down to about 2 months.

Surely, under these affirmatively stated and agreed facts, an appellate court could not be expected to hold that a trial court, vested with full authority to exercise a sound discretion, had abused it in requiring the sum found to be justly due paid now instead of being doled out in small monthly dribbles over a period of years; especially so, in view of the further stipulation that in a few years the three oldest children would be able to materially increase the family earnings.

[8] There only remains the claim that the legal rate of interest of 6 per cent. should have been allowed as a discount instead of the 5 per cent. applied.

This court is unable to so hold. Our Compensation Law does not provide that a dis-

count must be allowed when the liability is redeemed in a lump sum, and it would be entering the legislative field for a court to undertake to read that requirement into the statute. The only reference to a discount at all found in the act is that appearing in section 15a, pt. 1, Act of 1917 (article 5246—34), which in full is as follows:

"*Increasing Amount of Weekly Installments.* —In any case where compensation is payable weekly at a definite sum and for a definite period, and it appears to the board that the amount of compensation being paid is inadequate to meet the necessities of the beneficiary the board shall have the power to increase the amount of compensation by correspondingly decreasing the number of weeks for which the same is to be paid allowing such discount to the company increasing such payments as is applicable in cases of lump sum settlement."

This at most appears to contemplate that the Accident Board may in the exercise of its discretion allow some discount in cases of lump sum settlement, and it is made to appear here that the board has so construed the law and as a standing rule for its administration has adopted for such cases the 5 per cent. rate. The trial court in this instance, having the same authority, followed that rule. Beyond the insistence that the interest rate of 6 per cent. should be substituted as a matter of law, there is no attempt here to show that the 5 per cent. rate applied was in fact unreasonable, arbitrary, or unjust. There is, of course, a mathematical difference between interest and discount, and if the former is not enjoined by law and the use of the latter is not shown to have been a misuse of authority, or an abuse of discretion, it would clearly not be within the province of a court of review to interfere.

It follows from the conclusions stated that all assignments should be overruled and an affirmance of the judgment directed; that order has been entered.

Affirmed.