CONSOLIDATED UNDERWRITERS v. SAXON et al. (No. 904.)*

(Court of Civil Appeals of Texas. Beaumont. March 1, 1923. Rehearing Denied March 28, 1923.)

1. Master and servant ☞373—Injury from assault by coemployé during altercation about tools held compensable as received "in course of employment."

Where an employé while engaged in his work with his master's tools provided for that purpose was assaulted and fatally injured by another employé during an altercation which arose out of a contention for the use of the tools, deceased merely defending himself and retaining the tools for use in finishing his work, and there was no personal grudge between them, held, the altercation not being a personal one, but growing out of matters connected with deceased's work, the injury was received "in the course of his employment" within the terms of Workmen's Compensation Act, pt. 1, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1) as defined by part 4, § 1, subd. 4 (article 5246—82, subd. 4); the expression "in the course of his employment" having reference to the time, place, and circumstances under which the injury occurred.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

2. Master and servant ☞362—Repair work by foreman of sawmill shut down for repairs held not "casual employment"; "employé."

The fact that a sawmill was shut down for repairs and that the foreman was superintending repair work in the engine room when he was assaulted and fatally injured did not affect his status as an employé within Workmen's Compensation Act, pt. 4, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82), and make his work a mere "casual employment" rendering the injury not compensable, where it was his duty as foreman to see that the mill was kept in proper repairs for operation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

3. Master and servant ☞418(6)—Award of compensation in lump sum question of fact.

The question of whether an award under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) should be paid in weekly installments or in a lump sum is one of fact for trial court.

4. Master and servant ☞405(6)—Evidence held to justify award of compensation in lump sum.

Where deceased left surviving a widow 38 years old with four minor children living with her, the oldest of them being a boy 16 years old, who worked when he could at $2 per day, and also a married daughter living apart from her husband and assisting the widow in running a boarding house from which they made no profits, held, that a judgment for compensation in a lump sum was justified by the evidence.

5. Master and servant ☞386(4)—Compensation in lump sum for death should be discounted.

In rendering a judgment awarding compensation in a lump sum for the death of an employé the present value of the amount allowable for the compensation period should be fixed by allowing a discount at a rate determined from the evidence as a question of fact, and the judgment should be for the present value with interest thereon at 6 per cent. from the date of death to the date of the judgment, on which the beneficiaries are entitled to interest at that rate from the date of the judgment until paid.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted April 25, 1923.

**6. Master and servant ⚖️418(6)—Dependency within Compensation Law question of fact.**

Dependency within the Compensation Law is a question of fact for trial court.

**7. Master and servant ⚖️418(5)—Compensation insurer held not entitled to complain of finding of dependency.**

Where the other beneficiaries made no complaint against a finding that a married daughter of a deceased employé was a dependent entitled to a part of the compensation, and the finding in no way affected either the amount of compensation or its manner of payment, the insurer, appealing from the judgment awarding compensation, could not be heard to complain on the ground that the evidence was insufficient to show that she was a dependent.

**8. Master and servant ⚖️420—Fee of attorney appointed guardian ad litem of minors in compensation case held properly allowed to be taxed as costs.**

In a suit by the insurer to set aside an award of the Industrial Board allowing compensation to the widow and children of deceased employé, where the widow set up a cross-action for and in her own behalf and as her next friend for her minor children, and the court, at plaintiff's request, appointed an attorney to represent the minors, and he answered for them, it was proper to allow the attorney as guardian ad litem a fee of $50 to be taxed as costs in the judgment against plaintiff, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1942, requiring appointment of guardian ad litem for minors; there being nothing in the compensation statute to the contrary.

Appeal from District Court, Polk County; J. L. Manry, Judge.

Suit by the Consolidated Underwriters against Ada Saxon and others to set aside an award of the Industrial Accident Board. Judgment for defendants, and plaintiff appeals. Judgment affirmed as modified.

C. A. Lord, of Beaumont, for appellant. Feagin, German & Feagin and F. Campbell, all of Livingston, for appellees.

O'QUINN, J. This suit was brought by appellant against appellees to set aside an award of the Industrial Accident Board allowing appellees compensation as claimed by them in the sum of $15 per week for 360 weeks, beginning April 4, 1921, on account of the death of W. L. Saxon, husband and father of appellees, who was an employé of the Saner-Ragley Lumber Company at the time of his death.

Appellees answered and filed cross-action against appellant, asserting their right to compensation, and alleging that the Saner-Ragley Lumber Company, a corporation operating a sawmill manufacturing lumber, was a subscriber within the terms of the Compensation Law, carrying a policy of insurance with appellant and that W. L. Saxon, deceased, was an employé of said Saner-Ragley Lumber Company, and that on April 4, 1921, while engaged in his work as foreman of the sawmill of said company, he was assaulted by Abe Johnson, another employé of said Saner-Ragley Lumber Company, and by said Johnson cut and stabbed, from the effects of which he died on April 8, 1921, and prayed for compensation in a lump sum.

Appellant pleaded general denial in answer to appellees' cross-action.

The case was tried before the court without a jury, and the award made by the Industrial Accident Board was set aside, and judgment rendered for appellees on their cross-action for the full amount of compensation claimed, covering 360 weeks at $15 per week, and decreed that the whole amount, $5,400, should be paid in a lump sum, without discount, with interest at the rate of 6 per cent. per annum on said sum from April 4, 1921, the date of the injury.

At the request of appellant, the court filed his findings of fact and conclusions of law, which are:

"Findings of Fact.

"(1) I find that on April 4, 1921, the Saner-Ragley Lumber Company was engaged in the operation of a sawmill plant at Carmona, Polk county, Tex., and was a subscriber to the Employers' Liability Act of the state of Texas; that on said date it had in full force and effect a policy of insurance with the Consolidated Underwriters, plaintiff herein, covering the employés of said Saner-Ragley Lumber Company; that on said 4th day of April, 1921, W. L. Saxon was an employé of said Saner-Ragley Lumber Company, and as such employé was covered by said policy of insurance.

"(2) That on the 4th day of April, 1921, the said W. L. Saxon was in the employment of said Saner-Ragley Lumber Company as foreman of its sawmill; that as such foreman he had authority over the men employed at said mill, and had general charge of all machinery and tools belonging to the Saner-Ragley Lumber Company and in use at and around said sawmill in connection with its business; that on said date R. M. Eagle was the general superintendent of said sawmill, and had general authority over and superior to that of W. L. Saxon; that on the morning of the 4th of April, 1921, shortly after 7 o'clock a. m., and after the said W. L. Saxon had gone on duty, he was at or near the boiler house connected with said sawmill; that at said time he was in charge of certain men who were preparing mortar and making repairs on the furnaces, the said Saxon directing said work; that in doing said work he had and was using two shovels belonging to the Saner-Ragley Lumber Company, which had been obtained on the day before from the tool house connected with the track department, having gotten same from said tool house under instructions from the superintendent, R. M. Eagle, and which were gotten by him for the purpose of doing the work at said sawmill which he was engaged in doing

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

on the morning of April 4, 1921; that, while at said sawmill and engaged in the work aforesaid, one Abe Johnson, who was an employé of the Saner-Ragley Lumber Company, and who was temporarily in charge of a section crew working in the track department of said sawmill, came upon the sawmill premises where the said W. L. Saxon was engaged in his work, and stated that he wanted to get the two shovels that had been obtained the day before from the tool house; that the said W. L. Saxon declined to give said shovels to the said Abe Johnson, for the reason that he needed them in the work he was doing, and was required to use them in order to do the work he had been instructed to do by the superintendent, R. M. Eagle; that, when the said Abe Johnson first approached the said W. L. Saxon, he spoke to him in an angry manner with reference to said shovels; that immediately after said conversation the said W. L. Saxon and the said Abe Johnson walked under the mill shed, a distance of some 20 or 30 feet from where said work was being done, and immediately after getting under said mill shed the said Abe Johnson attacked the said W. L. Saxon with a knife, and before the said Saxon could escape, and while he was trying to defend himself against said attack, the said Johnson cut and stabbed the said Saxon in such a way and manner that he died from the effects of such wounds on the 8th day of April, 1921; that the said W. L. Saxon was in no way the aggressor, but that he acted wholly in his own defense.

"(3) I find that there was no reason of any kind personal to either the said W. L. Saxon or the said Abe Johnson by which said attack was brought on, but that the only reason the said Johnson assaulted and killed the said Saxon was because he was employed at the time as foreman of said sawmill, and because of his said employment he had charge of and was using said shovels, and in the exercise of his authority as foreman he retained the same and refused to deliver same to the said Johnson.

"(4) I find that at the time of the death of the said W. L. Saxon his average weekly wages were $35.94; that in due time claim for compensation on account of the death of the said W. L. Saxon was filed with the Industrial Accident Board by those entitled under the law to receive compensation for his death; that on the 18th day of August, 1921, the said Industrial Accident Board entered its judgment and order to the effect that the death of the said W. L. Saxon resulted from injuries sustained in the course of his employment, and awarded compensation in the sum of $15 per week for a total of 360 weeks; that said compensation was awarded in favor of Mrs. Ada Saxon, the surviving widow, and Mrs. Etha Perkins, Floyd Saxon, Norman Saxon, Lois Saxon, and William Saxon, as dependent children of said W. L. Saxon; that in due time notice was given and suit filed here to set aside the judgment and award of the Industrial Accident Board.

"(5) I find that Mrs. Ada Saxon is the surviving widow of W. L. Saxon, and that Mrs. Etha Perkins, Floyd Saxon, Norman Saxon, Lois Saxon, and William Saxon are the dependent children of said W. L. Saxon, and that Mrs. Paul Adams, the daughter of said Saxon, was not dependent upon him at the time of his death, and that no other parties other than those named above were dependent on him. I

find that the said Mrs. Ada Saxon has no property of her own; that she is engaged in running a small boarding house at Carmona, Tex., and that her necessary expenses in running same amount to about $45 per week; that four of said children are minors, and only one of same is capable of earning anything to aid in the support of the family; that this is a case in which manifest injustice and hardship would result if the compensation was paid only in weekly installments; that the maximum compensation allowed under the law, to wit, the sum of $5,400, is a fair and reasonable compensation allowable under the circumstances of this case.

### "Conclusion of Law.

"I conclude, as a matter of law, that W. L. Saxon was killed in the course of his employment as foreman of the sawmill of the Saner-Ragley Lumber Company; that his beneficiaries under the law are entitled to recover the maximum compensation allowed under the law, with interest thereon from April 4, 1921, and judgment has been rendered accordingly.

"[Signed]　J. L. Manry, Judge Presiding."

[1] Appellant's first two propositions challenge the court's findings of fact and conclusion of law that the deceased, W. L. Saxon, was killed in the course of his employment, and assert that the injuries of W. L. Saxon, causing his death, were not received in the course of his employment, within the terms of the Compensation Law, but that said injuries were the willful acts of a third person, intended to injure the said Saxon because of reasons personal to him.

This contention cannot be sustained. The undisputed facts show that R. M. Eagle was the general superintendent of the Saner-Ragley Lumber Company—general manager of the entire plant. Saxon was foreman at the sawmill, and as such had charge of all work pertaining to same. Johnson was the negro section foreman, employed in the railroad department of the company. At the time Saxon received his injuries the mill was shut down for repairs, and Saxon was engaged in having the repairs made. The repair work being done was on some brick furnaces in the boiler room, and being done under orders from the general superintendent, Eagle. Saxon asked Eagle for two shovels to be used in mixing mortar for said repair work, and Eagle had two shovels brought from the tool house of the section foreman. Eagle testified:

"I told him [Saxon] on Saturday to see if he could locate a couple of shovels, and on Sunday he sent me word he had been unable to locate— Well, when this negro [not Johnson] came to me and said Mr. Saxon wanted those shovels, I told him to go to the railroad man, Mr. Byrne, and have him send two shovels to the mill, which he did. Those shovels were sent to Mr. Saxon for use in the mill. Those shovels were sent from the railroad department. That was the department where Johnson worked. That was on Sunday. They were

being used in mixing mortar in repairing the furnaces in the mill. * * * The particular place that the work was going on was in the mill; the repair work was being done in the boiler room. * ' * * Mr. Saxon had those two shovels under my directions and at my instructions, and doing the work that you [I] had required him to do as superintendent of the mill."

On cross-examination he testified:

"I sent a man off to get those shovels. I gave him these instructions, to go and get those shovels, and take them to Mr. Saxon. I told him to get them from the tool house, out of the railroad department. I told him he would probably have to get them from Mr. Byrne, but I learned afterwards he did not. He knew the tool house was unlocked, and he went up there and brought them down. I did not follow him to see where he went."

On redirect examination, he testified:

"At this particular place where this work was going on and where these parties were, Mr. Saxon's authority was supreme at that place."

When Johnson went to go to work Monday morning, he missed the shovels, and went down to the mill and demanded them of Saxon, who told Johnson that he (Saxon) had to use them in mixing mortar, and Johnson replied that he had to have them, too. About that time Eagle was approaching, and Saxon said to Johnson, "Here comes the boss; he can settle this," and almost immediately Johnson assaulted Saxon with a knife and cut him so badly that he died. Johnson was indicted for the killing of Saxon and was convicted and sentenced to be hanged, and the judgment was affirmed by the Court of Criminal Appeals.

So it is seen that Saxon, at the time of receiving the injuries from which he died, was on the premises of and engaged in the business of his master. But for the employment he would not have been at the place of injury, and would not have been exposed to the danger. The employment was at least a contributing proximate cause—a hazard to which he would not have been equally exposed apart from the employment. His presence at the place of injury was solely for and in the interest of his master's business. The trouble originated in and arose out of and about the master's business, and not out of personal matters of either Saxon or Johnson (subdivision 4, art. 5246—82, Vernon's Ann. Civ. St. Supp. 1918); there was not, nor had there been, any personal grudge between them. In our compensation statute (article 5246—1) the expression "in the course of his employment" has reference to the time, place, and circumstances under which the injury occurred. Phil Hollenbach v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524; Lumbermen's Reciprocal Association v. Behnken (Tex. Civ. App.) 226 S. W. 154. Our stat-

ute is more liberal than the compensation statutes of many states. It does not require that the injury shall "arise out of the employment." Lumbermen's Reciprocal Association v. Behnken (Tex. Civ. App.) 226 S. W. 154.

The fact that the injury from which Saxon died was received at the hands of another employé of the company does not preclude appellees from receiving compensation, for the altercation arose about a matter that originated in and had to do with the business of their common master, and the assault was made on deceased at the place where he was working, deceased not being the aggressor, but merely defending himself from the assault of the other employé. It is undisputed that there was no ill feeling between Johnson and Saxon, but, to the contrary, the assault grew out of the fact that both employés were contending for the use of the master's tools, the two shovels, deceased only retaining them for use in finishing the work he had been directed by the general superintendent to perform, and with the tools provided him for that purpose. The altercation, therefore, was not a purely personal one outside of such employment, but grew out of matters connected with deceased's work, and hence the injury was received in the course of his employment. Georgia Casualty Co. v. McClure (Tex. Civ. App.) 239 S. W. 644; Employers' Indemnity Corp. v. Kirkpatrick (Tex. Civ. App.) 214 S. W. 956; Lumbermen's Reciprocal Association v. Behnken (Tex. Civ. App.) 226 S. W. 154; Id. (Tex. Sup.) 246 S. W. 72; Southern Surety Co. v. Stubbs (Tex. Civ. App.) 199 S. W. 346; Pekin Cooperage Co. v. Industrial Commission, 285 Ill. 31, 120 N. E. 530; Harnett v. Thomas J. Steen Co., 216 N. Y. 101, 110 N. E. 170; Railway Co. v. Industrial Commission, 288 Ill. 126, 123 N. E. 278, 10 A. L. R. 1170; McNeil v. Mountain Ice Co., 38 N. J. Law J. 346; Swift & Co. v. Industrial Commission, 287 Ill. 564, 122 N. E. 798; Cranney's Case, 232 Mass. 149, 122 N. E. 266, 15 A. L. R. 584; Stertz v. Commission, 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918B, 354; Hulley v. Moosbrugger, 87 N. J. Law, 103, 93 Atl. 79; State ex rel. Brewing & Malting Co. v. Dist. Court, 129 Minn. 176, 151 N. W. 912; Heitz v. Ruppert, 218 N. Y. 148, 112 N. E. 750, L. R. A. 1917A, 344; Weekes v. William Stead, Ltd., 6 N. C. C. A. 1010; In re Reithel, 222 Mass. 163, 109 N. E. 951, L. R. A. 1916A, 304, 11 N. C. C. A. 235, and note; Polar Ice & Fuel Co. v. Mulray, 67 Ind. App. 270, 119 N. E. 149; Indemnity Corporation of Ohio v. Pora, 100 Ohio St. 218, 125 N. E. 662; Sponatski's Case, 220 Mass. 526, 108 N. E. 466, L. R. A. 1916A, 333.

[2] Appellant, by its third proposition, contends that the deceased was the foreman of the sawmill, but, as the mill was shut down for repairs, was not engaged in the manufacturing of lumber at the time he was as-

saulted and killed, but was engaged in repairing the furnaces in the engine room, and that said work of repairing was not the work usually performed by deceased, but was "a mere casual employment," having no direct connection with his usual employment in the operation of the sawmill, and hence the injury was not received in the course of his employment, within the meaning of the statute, and therefore not compensable. The proposition is without merit. Eagle, the general superintendent of the Saner-Ragley Lumber Company, testified:

"Mr. Saxon was cut by Abe Johnson shortly after 7 o'clock on Monday morning, April 4, 1921. At the time he was under the sawmill on the ground floor of the sawmill. As to what his duties were at the time, he was engaged in mill repairing; the mill was closed down. At the time he was at and about his usual place of work, and at that time was engaged in the usual and customary duties of his position as foreman of the mill."

He further testified:

"Mr. Saxon had those two shovels under my direction, and at my instructions and doing the work that you (meaning I) had required him to do as superintendent of the mill."

The record contains an agreement by the parties on the trial that Saxon was an employé of the Saner-Ragley Lumber Company, and as such employé was covered by the insurance policy carried by said company with appellant, and the facts in evidence also show same without dispute. The fact that the mill was shut down for repairs and that deceased was superintending the repair work in the engine room, a part of the mill plant of which he was foreman, does not, in the least, affect his status as an employé, within the terms of the law, for it was his duty, as foreman, to see that the mill was kept in proper repairs for operation, and, besides, the testimony of the general superintendent, Eagle, shows that he was at and about his usual place of work in the discharge of his usual and customary duties as foreman. His employment on the day of his injuries was in no sense casual. Article 5246—82, Revised Statutes; Gross & Bros. Co. v. Industrial Commission, 167 Wis. 612, 167 N. W. 809.

[3, 4] Appellant next complains that the court erred in awarding appellees judgment for compensation in a lump sum, insisting that under the facts this is not a case where manifest injury or hardship would result if the compensation were paid in weekly installments.

We cannot agree with appellant. Mrs. Saxon testified:

"I am the surviving wife of deceased. I am now 38 years old. I weigh about 98 pounds. I live now at Carmona, Tex. I have six children, five at home with me. The one away from home is married. She is not living with me, but she is living with her husband. Her name is Gladys Adams. My next oldest child, the one living with me, is Etha. She is married, but she is not living with her husband. Her name is Etha Perkins. She is living in the house with me. My next oldest child is Floyd. He is 16 years old, and is living with me. The next child is named Marvin, he is 12 years of age, and is living with me. The next child is named Lois. That is a girl. She is 8 years of age, and she is living with me. The next child is named Billy. He is a baby 5 years of age and living with me. I am now running a boarding house there at Carmona to make a living. I have been running a boarding house two years in May, I believe. I have from eight to ten regular boarders; I mean men that room and take their meals there, too. There are a few transient men that eat there, too. I have no one to help me to do the work there except my daughter Etha. I have no one that contributes to the buying of my supplies and things of that kind, but attend to that myself. I imagine that approximately $40 or $50 a week is my weekly expenses in the operation of that hotel and running that boarding house. We spend over $200 a month for groceries, and what we wear—just general expenses. My income from operating that boarding house is, I suppose, about $250 per month; maybe a little more. I don't make any profit at all in the operation of it. I have not got any one to help me support those children except myself, and they are looking to me, I guess, for their living. I send the least children to free school; I mean the three least ones. This is my daughter here that is living with me, and there is nobody to support her except myself and my own efforts. She is living with me as one of the members of the family. I have contracted to pay my attorneys 16⅔ per cent. of whatever I recover in this litigation."

On cross-examination she testified:

"Neither Mr. Saxon nor I had ever been married before. My children don't earn any money, not only what we work for. One of the boys works a part of the time. He works there at the mill some. He is 16 years of age and draws wages of $2 per day. He works out there in the shed somewhere. I don't know what it is he does. With reference to when he commenced working, well, he worked some before Papa died. He has not been working altogether ever since. He works some, not much. He does not work as a general thing. The reason why he does not work is he just stays there at the home. He cannot get employment altogether all the time. I do not know how many days he works per week, but I guess that he would average two or three days a week. * * * I said there is another one that is married and not living with her husband. It is this one that is here. She was 22 years old in June, 22 this month, and she lives there with me. She helps me with the work; that is all she does; she don't have time to do anything else. You asked me if she draws funds out of the business for her work. Well, we just spend it all together, just like home. I run the boarding house there at the mill, and she lives with me. It is a joint enterprise of myself and the other children— she and I and the other children—carrying on

the business the best I can, and I make all I can out of it. I do not know how much I make, as I never kept right up with it. I was running the boarding house before my husband died, and had been running the boarding house about 11 months before he died. I have been running it ever since. I do not pay any rent and I do not hire any servants at all. My regular number of men is eight and ten, and I get $1 per day. I also take in transients, and I get $1.50 to $2 per day for them. I don't pay any rent, because the property belongs to the mill company. I suppose it is an advantage to the mill company to have somebody running the boarding house. I suppose that is right. I don't own any property. I do not own any lands or property of any kind."

Recalled by appellants, she testified:

"Mr. Saxon's father is living and he is, I believe, about 76 years of age. As to what he does to make a living, well, he lives around with the children from place to place. He lived with my husband before his death. He was living there with us. He had been living there with us about five or six months, I guess. He was not able to work much; he quit work. We kept him up when he lived with us and the other boys when he stayed with them. You know his mother is dead."

The above is all the testimony bearing on the financial condition of appellees. The question of whether the award should be paid in weekly installments or in a lump sum, is one of fact to be determined by the court. Millers' Indemnity Underwriters v. Green (Tex. Civ. App.) 237 S. W. 981; Texas Employers' Insurance Association v. Boudreaux (Tex. Com. App.) 231 S. W. 756. After full hearing, the court found that manifest hardship and injury would result if the compensation was paid in weekly payments, and the record amply sustains this finding. There is an abundance of evidence to justify the judgment that payment should be made in a lump sum. Texas Employers' Insurance Association v. Downing (Tex. Civ. App.) 218 S. W. 112, 120; Lumbermen's Reciprocal Association v. Behnken (Tex. Civ. App.) 226 S. W. 154, 157; Id. (Tex. Sup.) 246 S. W. 72; Millers' Indemnity Underwriters v. Green (Tex. Civ. App.) 237 S. W. 979.

[5] Appellant's fifth proposition is:

"The judgment rendered is excessive in that a discount of at least 5 per cent. should have been allowed in determining the lump sum or present value of the compensation arising, and it is further excessive in the amount of the interest so awarded; that is, if a lump sum is awarded in any compensation case, a proper discount should be deducted from the gross amount of compensation, and in no case should interest be allowed on the entire gross compensation from the date of the injury."

Counsel for appellees have filed an able and persuasive argument that discount is allowable only in cases of "settlement," and not in any case where the party liable is "compelled" to redeem its liability in a lump sum, at the end of a long and expensive litigation. The question has given us no little trouble, but we have concluded that it is ruled by our holding in the case of Western Indemnity Co. v. Milam (Tex. Civ. App.) 230 S. W. 825, and that of the Supreme Court in Lumbermen's Reciprocal Association v. Behnken (Tex. Sup.) 246 S. W. 72, 76, that discount should be allowed at the rate of 5 per cent. Appellees are entitled to compensation at the rate of $15 per week for 360 weeks, totaling the sum of $5,400, which, discounted at the rate of 5 per cent., would have a present value of $4,636.875. From the death of deceased, April 8, 1921, to date of the judgment in this court, February 8, 1923, is 96 weeks, during which time no compensation has been paid, and therefore appellees are entitled to interest on said sum of $4,636.875 for said time at 6 per cent., which amounts to $511.91, which, added to the $4,636.875, makes the sum of $5,148.875, the amount due on the date of this judgment, and upon which appellees are entitled to interest at the rate of 6 per cent. from said date until paid.

It appears from the amount of the recovery awarded by the trial court in this cause that he ruled as a matter of law, on the facts of this case, that no discount should be allowed on the lump sum awarded; that is to say, he allowed recovery at the rate of $15 per week for the full compensation period. This ruling, in our judgment, was error because, as was said by Judge Greenwood in Lumbermen's Reciprocal Association v. Behnken, supra:

"The statute contemplated that the court fix the present value of the weekly installments prescribed by the act."

A present value necessarily involves a discount. See, also, the Milam Case, supra, decided by this court. Also, as we understand the decisions of our courts on this question (the two opinions in the Behnken Case), the rate of discount is a fact question to be determined by the trial court in the first instance, subject to review on appeal as in other cases. As a matter of original jurisdiction, we doubt whether we would have the authority to determine the rate of discount. In this case, as in the Behnken Case, there was no evidence offered on this issue, but appellant has asked us to allow a discount of 5 per cent. in accordance with the uniform custom of the Industrial Accident Board, and, as appellees join in this request, provided we hold that discount should be allowed, we have fixed the rate at 5 per cent.

Appellant also complains that the court erred in allowing appellees judgment for interest on the sum for which the judgment was rendered from April 4, 1921, the date of the injury to deceased. We think this was error, and we reform the judgment to carry interest as above set forth.

[6, 7] Appellant complains that the court awarded one-tenth of the compensation granted to Etha Perkins, the daughter of deceased, who at the time was a married woman 22 years of age, but separated from her husband and living with her father, insisting that the evidence was insufficient to show that she was a dependent of the deceased within the meaning of the Compensation Law. Dependency is a question of fact. Lumbermen's Reciprocal Ass'n v. Warner (Tex. Civ. App.) 234 S. W. 547. The court found that she was a dependent, and we think the evidence supports the finding. Herrick's Case, 217 Mass. 111, 104 N. E. 432. Furthermore, the other beneficiaries make no complaint, and, as the finding in no way affects the amount of compensation to be paid by appellant or the manner of paying same, we do not think it can be heard to complain of the award. In re Janes, 217 Mass. 192, 104 N. E. 556. The proposition is overruled.

[8] Appellant, by its seventh proposition, complains that the court appointed an attorney as guardian ad litem to represent the minor claimants of compensation, and allowed said attorney a fee of $50 for said services to be taxed as costs in the case, and asserts that same was error, because said minors were awarded compensation upon their cross-action duly filed by their mother as next friend.

The record discloses that this suit was brought by appellant against appellees to set aside an award made by the Industrial Accident Board, and that appellant in its petition complained of each of said minors, praying that they be cited to answer as defendants, and that a guardian ad litem be appointed to represent them. Appellee Mrs. Ada Saxon, mother of said minors, appeared and answered appellant's petition, and set up cross-action for and in her own behalf and as next friend for said minors. The court, in obedience to the request of appellant, appointed an attorney to represent said minors, and he appeared and answered for them, adopting the pleading theretofore filed by the other defendants, and adopting in full the prayer in their said answer. When judgment was rendered, the court allowed said attorney, as guardian ad litem for said minors, a fee of $50, and that same should be taxed as costs.

The proposition is overruled. The statute (article 1942, Vernon's Sayles' Civil Statutes) requires the appointment of a guardian ad litem in all cases where minors are defendants. We do not find anything in the compensation statutes that takes the case out of the general law nor any provisions contrary thereto. Article 1942, Revised Statutes; Japhet v. Pullen (Tex. Civ. App.) 153 S. W. 1188–1190; Simmons v. Arnim (Tex. Civ. App.) 172 S. W. 184.

With the modifications above indicated, as to discount and interest, the judgment is affirmed.