## TEXAS EMPLOYERS' INS. ASS'N v. BECKWORTH.

### No. 3649.

Court of Civil Appeals of Texas. Amarillo.

Oct. 7, 1931.

Rehearing Denied Nov. 4, 1931.

Underwood, Johnson, Dooley & Simpson, of Amarillo, for appellant.

Wm. F. Nix, of Amarillo, for appellee.

RANDOLPH, J.

This suit is an appeal from an award of the Industrial Accident Board by appellee to the district court of Potter county, as plaintiff, against the appellant, Texas Employers' Insurance Association, defendant, to recover compensation alleged to be due the plaintiff for injury to himself, suffered on the 10th September, 1929, in Potter county, Tex., while an employee of Willborn Brothers Company at the time he was engaged in unloading a charge car from a truck.

The defendant filed its answer, consisting of a general exception, general denial, and specially pleading that if the plaintiff is or ever has been entitled to have or demand compensation benefits against defendant by reason of the alleged injuries mentioned in his pleadings herein, none of which is admitted but is expressly denied, the plaintiff has been paid such amount and duly received to his use and benefit the sum of $650, and defendant says that such sum has wholly discharged all compensation claims, if any, which plaintiff ever rightfully held in the premises.

In the trial in the district court, the case was submitted to a jury upon special issues, and upon the answers of the jury to same, the court rendered a judgment for the plaintiff. From said judgment appeal has been taken to this court.

The defendant in its first ten assignments of error complains of the admission of facts in evidence showing plaintiff's extreme poverty. Also as to the testimony of plaintiff in answer to the following questions: "How much money did you have on hand when they quit paying you?" Which was asked of plaintiff after he had testified that the association had discontinued the payments of weekly compensation, to which he testified: "I just had the last check they paid me." The plaintiff was then asked the question: "What had you been using your money for?" Over the objection of the defendant, the plaintiff testified: "To pay grocery bills and house rent."

The other nine assignments are based upon the questions, asked plaintiff and his wife, as to his inability to provide food and clothing for his family; the fact that he had supported his family on charitable donations by the church people; that he had been compelled to sell his furniture to get food. These facts are also brought out by the evidence of other witnesses, to which due objection was made. The objection was made by the

defendant that the evidence was immaterial and irrelevant.

The plaintiff had pleaded extreme poverty in order to sustain his claim for a lump-sum settlement. This evidence was not irrelevant or immaterial. It shows the dire extremity of the plaintiff and his family and their need for a lump-sum settlement.

The evidence discloses that the plaintiff had, before his injury, supported his family in comfort, and that after his injury he was compelled to dispose of his furniture until only the merest necessities in the way of furniture were left, and that he and his family had been subsisting on church charities since then. From the evidence it appears that he was providing for his family in a way that denoted some degree of thrift in one of his class. Hence, the court did not err in admitting this evidence.

In the case of Consolidated Underwriters v. Saxon, 265 S. W. 143, 146, the Commission of Appeals says: "Weekly payments are provided in the act out of regard for the beneficiaries themselves, and not out of regard for the association or insurance companies. The provision for weekly payments was inserted, because such payments were, in the judgment of the Legislature, for the best interests of those to whom compensation was provided—to prevent squandering and waste. A 'special' case is not necessarily determinable by the relative poverty of the claimant. The thrift, intelligence, foresight, habit of frugality, capacity to manage and keep the money of the given claimant, might as well make his a special case as direst poverty. The statute undertakes to leave it to the judgment of the court or jury as to what constitutes a special case. In such consideration the jury or court is not confined to a consideration of the paucity or profuseness of the claimant's earning capacity or income. Weekly payments might work the greatest 'hardship or injustice' to the claimant having the greatest capacity because there might be, and probably would be, joined with that capacity ability and power to conserve and use beneficially and profitably the whole sum of the association's liability. Commutation to lump sums have been made in order to enable the employee to invest his compensation in a business of his own."

The Commission of Appeals, in the case of Herzing v. Texas Employers' Ins. Ass'n, 17 S.W.(2d) 1046, holds:

"Industrial incapacity (at least incapacity for such work at [as] Miss Herzing had been doing) is established by the verdict. And there is evidence tending to show: Poverty; lack of relationships wherein others are bound for her aid or support; necessity for help in ordinary personal affairs, such, e. g., as bathing or dressing; necessities (with prospects of continuance thereof) requiring expenditures consuming all or a large part of 'weekly payments' so as that nothing would be left at end of 401 weeks; possibilities of present (or immediately future) handling of the 'lump sum,' or a substantial part thereof, so as to produce revenue or by way of investments resulting in enhanced assets.

"We do not propose definition of a 'special case.' But we do hold that the evidence supporting the findings of industrial incapacity (total and permanent) with the other evidence just summarized is some evidence of a 'special case.' Cf. Lumbermen's Reciprocal Ass'n v. Behnken [112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402; Id. (Tex. Civ. App.) 226 S. W. 154], supra; Consolidated Underwriters v. Saxon [(Tex. Civ. App.) 250 S. W. 447; Id. (Tex. Com. App.) 265 S. W. 143], supra; Travelers' Ins. Co. v. Smith (Tex. Civ. App.) 266 S. W. 574–578; Georgia Casualty Co. v. Little (Tex. Civ. App.) 281 S. W. 1092, 1095. The insurer's assignment (to the contrary) must be overruled."

We therefore overrule the first ten assignments of error.

■ The defendant assigns as error the court's sustaining of an objection to its question addressed to the plaintiff while he was on the stand, in which he was asked: "What did you do down there that any ordinary unskilled laborer could not do?" The plaintiff partly answers this question: "Well, I don't know, any man that had any"—which was objected to by plaintiff's counsel as a supposition. The action of the court, if error, was rendered harmless because the defendant in cross-examining this witness proved by him: "That any ordinary man with strength and with his faculties at his disposal could do what he did down there."

The witness A. H. Willborn testified for appellant that he is and was the president of Willborn Brothers Company. That they had from twenty to thirty men employed.

"We carried a policy of workmen's compensation insurance issued to us that we kept in our possession during the year 1929. As to whether the premium had been paid to put it in force on the 10th day of September, 1929, I will state that the premium on that policy was paid monthly; sometimes maybe two months at one time. * * * For me to say that it was paid up to that time I would not want to make that statement. We considered that we had a policy in force all during that year. I do not know where that policy is now. I do not know what became of it. Ordinarily policies out of date are destroyed. I have not made any search for this policy and there was no search made by my office force that I know anything about. I will state that the general rule is that they are destroyed, but I would not say this one was destroyed, for I do not know. I don't think that I would know where it would ordinarily be found in

our office and I don't know whether it is there or not. H. O. Willborn was the one who testified before. He was summoned here in this court and I think it was on this case. He is out of town today. I would not say positively that I would know the policy if I would see it again. That would be a matter of memory that I don't charge my memory with. I could not say whether the instrument shown me is a copy of the instrument or not without a comparison. The Texas Employers Insurance Association, I think, is the style of the company that sold the policy to us.

"On the day that Mr. Beckworth was injured, we considered that he was an employee of ours working in the regular line of his duty. We were paying him for what he did and we were satisfied with the services being rendered on that day."

Defendant objected to the questions propounded and the evidence sought thereby, on the ground that same called for an opinion and conclusion on a mixed question of law and fact, which objections were overruled by the court.

In addition to the witness Willborn, R. E. Collier was placed on the stand for the plaintiff, and testified that he was a claim adjuster for the Texas Employers' Insurance Association and had been for three years. His duties as adjuster for the Texas Employers' Insurance Association was to handle all correspondence with reference to the claims and do what adjusting that was to be done. That his files do not show who is protected by the policies of the Texas Employers' Insurance Association, and he does not know whether they had a policy covering Willborn Brothers Company on September 10, 1929. That does not come in his work and he does not see the policies. All that he has is the accident report that was sent in. He also thinks that there has been some telegrams passed between him and the home office concerning the case. He has never had an expression from the home office as to whether or not there was a policy covering the case. He knows Geo. Crouson. That Crouson carries the title of assistant secretary to the Texas Casualty Company, and to the Texas Employers' Insurance Association, and further testified that his company has paid plaintiff something—it was approximately 34 or 35 weeks', possibly 36 weeks', compensation, and then testified: "I mean by that, that it is payable by the week, weekly compensation and it was compensation my company paid him. I believe that we paid $19.04 a week. I do not know what injury or alleged injury that my company was undertaking to compensate him for when they paid him this money. All I know is the doctors reports that came in and I sent to the home office. That is all I know about it. I think the doctors always start off by saying that he got hurt on such and such a day. The most of the doctors reports were in reference to his

physical condition but some of it is history. I think I know when Albert Beckworth was supposed to have been injured, September 9, 1929, Sept. 9, 1929, I believe is the day. * * * As to my getting letters from Mr. Crouson, I never got a letter from him in my life and I never saw him sign his name in my life. I guess I have seen what purported to be his signature on various documents but I never saw him write his name and I would not know his signature if I was to see it."

W. T. Howerton, secretary of the Industrial Accident Board of Texas, testified that the notice that they had become a subscriber for compensation insurance is filed by Willborn Brothers Company by H. O. Willborn, secretary, and on the part of the insurance company, which is signed G. M. Crouson, and he attaches a certified copy of same to his depositions. This copy of notice was dated July 7, 1929, and was effective from that date, but was only introduced before the trial court for jurisdictional purposes.

Within due time the plaintiff made the application for compensation for his injuries. This proof was also introduced only for jurisdictional purposes. In fact, all of the jurisdictional steps were taken before the Industrial Accident Board to establish the jurisdiction of the court. This included that the policy under which Willborn Brothers Company operated was effective July 1, 1929, and the number of the policy shown to be No. F-1777.

■ The question of due issuance of the policy sued on and effective date thereof was a matter for the court to pass on, and the trial court having ascertained that he had jurisdiction, that question was not before the jury.

But should we be wrong in this, then it appears from the quoted evidence, and the evidence clearly raises such issue, that the policy sued on had been issued and delivered to Willborn Brothers Company and was in effect at the time of the accident and injury to the plaintiff. Millers' Indemnity Underwriters v. Boudreaux (Tex. Civ. App.) 245 S. W. 1025, 1029, affirmed in (Tex. Com. App.) 261 S. W. 137, 140.

The San Antonio Court of Appeals, in the case of Georgia Casualty Co. v. Ginn (Tex. Civ. App.) 272 S. W. 601, 602, says that: "Under the facts in this case, showing the conduct of appellant in making these partial payments and its acquiescence, it does not lie in the mouth of appellant to now deny the issuance of this policy. It was in possession of its own books and records relating thereto, and, if it had not issued such a policy, it was in a position to make the proof, and its silence or failure to produce the evidence will be construed most strongly against appellant." Citing authorities. See, also, Huddleston v. Texas Pipe Line Co. (Tex. Civ. App.) 230 S.

W. 250; Independence Indemnity Co. v. Polk (Tex. Civ. App.) 14 S.W.(2d) 330, 332; Barron v. Texas Employers' Insurance Association (Tex. Com. App.) 36 S.W.(2d) 464.

▮ The defendant, having acted on the claim of plaintiff, and having acquiesced to the extent of making 35 or 36 payments, it cannot now deny that it issued such policy.

▮ Under its fifteenth, sixteenth, seventeenth, and eighteenth assignments of error, defendant presents error of the court in varied form in admitting the following evidence, over defendant's objection: Whether or not there were employees in Amarillo on the 10th day of September, 1929, who were engaged in the same kind of work the plaintiff was doing for Willborn Brothers Company and who had been so engaged for the year next preceding that day; that he knew there were such employees; that he knew such workmen were engaged in such work regularly for 9½ hours per day and that they did overtime; and that such workmen were receiving 60 cents to 65 cents an hour for such labor.

The defendant's objections were that the testimony sought was a conclusion of the witness, leading and suggestive, and called for an answer which was purely the opinion of the witness.

This evidence was not subject to the objection made, but, if it was, the error was harmless. The defendant had voluntarily made 35 or 36 payments of $19.04 of weekly installments of compensation and thereby conceded the right of compensation as claimed and accepted by the plaintiff. The defendant did not plead in avoidance of this conduct any reason why same should not be counted against it. No pleading setting up mistake or fraud as to why it had made such payments was filed in the case; hence, this contention is not sound.

▮ It has been held that even where a plaintiff had failed to plead and prove an average weekly wage of $18.75, he sufficiently pleaded and proved the average weekly wage of $16.37, for the reason that he did plead and prove the payment by defendant of weekly payments in checks of $16.37. In the case at bar, the defendant pleaded the payment of the sum of $650 by it to the plaintiff, and it was shown by the evidence that such sum was based upon a weekly wage payment of $19.04. We therefore hold that the defendant had recognized the weekly wage to be as claimed by the plaintiff, and overrule this contention of the defendant.

We apply the rule laid down as to the proof of the existence and execution of the policy as laid down in Georgia Casualty Co. v. Ginn, supra, to the question of the proof of the weekly wage.

▮ The appellant's objections to the testimony of the plaintiff Beckworth and his witness McClelland cannot be sustained by us. They qualified to testify when they swore they knew the value of such services rendered by others in the same class as plaintiff, and the fact that they later disclosed on cross-examination that they knew this like they knew anything else, and they had seen checks issued to other workmen, does not alter the rule. The testimony was admissible, and the question of the correctness of their statements as limited by subsequent testimony was a matter to be passed on by the jury as to the weight to be given it. Byrd Irrigation Co. v. Smyth (Tex. Civ. App.) 157 S. W. 260, 263 (section 8); Gulf, C. & S. F. Ry. Co. v. Stewart (Tex. Civ. App.) 141 S. W. 1020, 1023 (section 4).

▮ The appellant's contention that the court's special issue No. 3 submitted to the jury: "Is such total incapacity, if any, permanent?" is an assumption that there was a total incapacity and was on the weight of the evidence, is overruled.

The trial court, having in the first part of his charge submitted the question: "Did the plaintiff Albert Beckworth, sustain any personal injuries on the 10th day of September, 1929?" and, following that, submitted special issue No. 2: "Was the plaintiff Albert Beckworth, totally incapacitated for work on the 10th day of September, 1929, as the direct result of said injuries, if any, so sustained on said date?" all three of which were answered in the affirmative, including the issue as above quoted, the first two issues being followed by the issue first quoted, that question was a natural sequence to the first two and was proper. The contention that the court did not submit to the jury the continuance of the state of permanence is hypercritical. "Permanent" includes the life of defendant.

We have discussed such questions presented in appellant's brief of fifty-three assignments of error which we deem important and material, but having neither time nor space to write a discussion of each, and having examined all of said assignments, and finding no reversible error, we affirm the judgment of the trial court.